**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN ROBINSON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>vs.<br><br>SYNCHRONOSS TECHNOLOGIES, INC., STEPHEN G. WALDIS, KAREN L. ROSENBERGER, RONALD W. HOVSEPIAN, AND JOHN FREDERICK,<br><br>Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff John Robinson ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Synchronoss Technologies, Inc. ("Synchronoss" or the "Company"), and information

1

readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of Synchronoss from December 6, 2016 through April 26, 2017, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). The Company's principal executive offices are in this judicial district, and a significant portion of Defendants' actions, and the subsequent damages, took place in this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased the Company's securities at artificially inflated prices during the Class Period and was economically damaged thereby.

7.     Defendant Synchronoss is incorporated in Delaware and headquartered in Bridgewater, New Jersey. The Company provides cloud solutions and software-based activation for connected devices worldwide. On or about January 19, 2017, the Company completed its acquisition of Intralinks Holdings, Inc. ("Intralinks"). The Company's securities trade on NASDAQ under the ticker "SNCR."

8.     Defendant Stephen G. Waldis ("Waldis") is the founder of the Company. Defendant Waldis previously served as the Company's Chief Executive Officer ("CEO") prior to the Class Period and has been the Company's CEO since April 27, 2017. During the Class Period, Defendant Waldis was the Company's Executive Chairman, Principal Executive Officer and director.

9.     Defendant Karen L. Rosenberger ("Rosenberger") was the Company's Chief Financial Officer ("CFO"), Executive Vice President, and Treasurer during the Class Period until her resignation on April 1, 2017.

10.    Defendant Ronald W. Hovsepian ("Hovsepian") was the CEO of Intralinks prior to its merger with the Company. Defendant Hovsepian was the Company's CEO from January 19, 2017 until resignation on April 27, 2017.

11.    Defendant John Frederick ("Frederick") was the Company's CFO from February 27, 2017 until his resignation on April 27, 2017.

12.    Defendants Waldis, Rosenberger, Hovsepian, and Frederick are collectively referred to herein as the "Individual Defendants."

13. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

14. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

16. Defendants Synchronoss and Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading
### Statements Issued During the Class Period

17. On December 6, 2016, the Company issued a press release announcing its acquisition of Intralinks and issued guidance for the first quarter of 2017. The press release stated in relevant part:

**ADDING and REPLACING Synchronoss Technologies to Acquire Intralinks Holdings Accelerating Strategic Transformation**

- Synchronoss to acquire Intralinks Holdings, Inc. for $13.00 per share or $821 million in equity value
- Intralinks will be a major step towards significantly expanding the scale and scope of Synchronoss' transformation to attack the multi-billion dollar enterprise market opportunity
- Ron Hovsepian, Chief Executive Officer of Intralinks, is expected to be appointed as Chief Executive Officer of Synchronoss upon closing of the transaction with Synchronoss
- Stephen G Waldis, Founder and current Chief Executive Officer, will remain active in the company serving as Executive Chairman of the Board, driving strategy, product innovation and oversight for the transformation
- Synchronoss to divest a portion of its activation business to Sequential Technology International for $146 million; strategic alternatives being pursued for remaining activation assets

BRIDGEWATER, N.J. & NEW YORK--(BUSINESS WIRE)--Dec. 6, 2016— "Forward Looking Statements" for Intralinks Holdings, Inc. has been added after the last paragraph of the release.

The corrected release reads:

**SYNCHRONOSS TECHNOLOGIES TO ACQUIRE INTRALINKS HOLDINGS ACCELERATING STRATEGIC TRANSFORMATION**

- Synchronoss to acquire Intralinks Holdings, Inc. for $13.00 per share or $821 million in equity value
- Intralinks will be a major step towards significantly expanding the scale and scope of Synchronoss' transformation to attack the multi-billion dollar enterprise market opportunity

5

- Ron Hovsepian, Chief Executive Officer of Intralinks, is expected to be appointed as Chief Executive Officer of Synchronoss upon closing of the transaction with Synchronoss
- Stephen G Waldis, Founder and current Chief Executive Officer, will remain active in the company serving as Executive Chairman of the Board, driving strategy, product innovation and oversight for the transformation
- Synchronoss to divest a portion of its activation business to Sequential Technology International for $146 million; strategic alternatives being pursued for remaining activation assets

Synchronoss Technologies, Inc. (NASDAQ:SNCR) and Intralinks Holdings, Inc. (NYSE:IL) today announced that they have entered into a definitive agreement for Synchronoss to acquire Intralinks for approximately $821 million in equity value. Under the terms of the agreement, Synchronoss will commence a cash tender offer to acquire all of the outstanding common stock of Intralinks for $13.00 per share. The transaction, which was unanimously approved by the board of directors of both companies, is expected to close late in the first calendar quarter of 2017, subject to customary closing conditions. Ron Hovsepian, Chief Executive Officer of Intralinks, is expected to be appointed Chief Executive Officer of Synchronoss and join the Synchronoss Board of Directors upon closing of the transaction with Synchronoss' Founder and current Chief Executive Officer, Stephen G. Waldis will move into the role of active Executive Chairman of the Board.

In Intralinks' 20-year history, over 4.1 million business users across the world have used its secure, cloud-based platform, and it counts 99% of Fortune 1000 companies among its customers. To date, Intralinks has supported over $31 trillion in high-stakes transactions, making the company a leader in the enterprise content collaboration market.

"Intralinks has established itself as a household name in the financial services world over the past 20 years, with a keen focus on growing its presence into the next generation secure content collaboration market over the coming years," said Stephen Waldis, Synchronoss' CEO. "This acquisition marks another major step in the transformation ofSynchronoss to significantly expand the scale and scope of the company's enterprise initiatives and strong carrier relationships in attacking this multi-billion dollar market opportunity. Ron brings significant leadership experience and a history of successfully integrating companies into a single portfolio. I intend to stay active in the company, driving growth opportunities and continued developments on new product innovation. I am excited to be working closely with Ron to bring Synchronoss into its next chapter of growth".

"Our board of directors unanimously concluded that Synchronoss is the ideal strategic partner for Intralinks and also gives our employees and customers the opportunity to leverage Synchronoss' deep relationships across the carrier space, cloud expertise, and strong partnerships in the financial services vertical," said Ron

6

> Hovsepian, CEO of Intralinks. "Together with Synchronoss, we believe we can deploy enhanced enterprise and mobile solutions to our customers while opening up new enterprise distribution channels across the world."
>
> In conjunction with today's announcement Synchronoss is also announcing an agreement to divest a portion of its activation business to Sequential Technology International, LLC for a total purchase price of $146 million. As part of this transaction, Sequential Technology will purchase 70% of Synchronoss' carrier activation business that is being divested, with Synchronoss retaining a 30% ownership piece which could be reduced during the course of 2017. Synchronoss is in the process of pursuing strategic alternatives for the remaining activation business assets.
>
> Synchronoss expects to finance the Intralinks acquisition with its existing cash, proceeds from the Sequential Technology transaction, and $900 million of new debt.
>
> Given the expected closing in the first calendar quarter of 2017, Synchronoss expects the Intralinks transaction to have no impact to its fourth quarter financials. With the impact from the Sequential Technology divestiture and assuming a late first quarter 2017 close on the Intralinks deal, ***Synchronoss is giving initial 2017 revenue guidance of between $810 million and $820 million with pro forma EPS of between $2.45 and $2.60 for the combined entity.*** We are targeting $40 million of combined synergies within the first year of closing the Intralinks deal.
>
> The Intralinks transaction is subject to the satisfaction of customary closing conditions, including regulatory approval in the United States. Until the transaction closes, each company will continue to operate independently.

(Emphasis added).

18.     On February 8, 2017, the Company held a conference call to discuss the fourth quarter of 2016 earnings (the "4Q16 Conference Call"). Defendants Waldis, Rosenberger, and Hovepian participated on the 4Q16 Conference Call. During the call, Defendants Rosenberger reiterated the previously issued guidance for the full year of 2017 and issued specific guidance the first quarter of 2017, stating in relevant part:

> Now, let me move to guidance for the first quarter and full year 2017 now with the Intralinks transaction closed. ***For 2017, non-GAAP revenues are expected to be in the range of $810 million to $820 million, unchanged from our initial guidance given on December 6 for the combined company.***

7

> On a normalized basis, when adjusting for divestitures and the Intralinks acquisition, this would imply year-over-year growth of between 13% and 15%. The revenue mix in our guidance is expected to be roughly 65% of revenues derived from our cloud carrier-based business and 35% through our cloud enterprise business, which is primarily a subscription-based model.
>
> While we would like investors to use these ranges, the revenue mix and its timing could be impacted by the structure of certain large and complex opportunities. ***For the first quarter, we expect total revenues of between $173 million and $178 million.***

(Emphasis added).

19. On the 4Q16 Conference Call, Defendant Waldis described the arrival of "Synchronoss 3.0" and the new future for the Company, stating in relevant part:

> With a core focus on cloud, analytics and enterprise moving forward, we believe that Synchronoss 3.0 is laying the groundwork for our new growth vision.
>
> We believe this sets the stage for massive cross-selling opportunities by accelerating our enterprise playbook. Together with Synchronoss and Intralinks as one company, we believe we can deploy enhanced enterprise and mobile solutions to our customers, while opening up new enterprise distribution channels across the world.
> With the Intralinks acquisition, enterprise will now represent over a third of our total revenues, thus helping us further diversify our business model over the coming years. On our carrier business, messaging has proved to be a key linchpin of cloud adoption, engagement and monetization with our existing customers. Key customer wins in the North America and Asia-Pacific regions are some of the strategic highlights over the past year and will be major building blocks in our growth story headed into 2017 and beyond.
>
> And on the enterprise front, while the Intralinks acquisition and integration was a core focus, we are also progressing well with the Goldman strategic partnership as we have successfully built the strong pipeline of customer enterprise pilots across various verticals with a core focus on financial and healthcare.

20. Further on the 4Q16 Conference Call, Defendant Hovespian had the following exchange with an analyst regarding revenue,

> **Samad Samana - Stephens, Inc.**
> I understand, and not to force the issue, but you closed it roughly, call it, 35, 40 days early. That's 35 to 40 more days of revenue that Intralinks should be generating. So, I'm just trying to understand whether there was less revenue than anticipated from

8

Intralinks or less from the core Synchronoss business versus when you gave guidance when you first announced the acquisition?

**Ronald W. Hovsepian - Synchronoss Technologies, Inc.**
Hi. This is Ron. How are you doing? To answer your question, there is some currency headwinds inside of those numbers that did affect the Intralinks business because of the global nature of how we operate. And then secondly, from an overall perspective, when we put those pieces together and then did the normalization on the year-over-year comparison, those are the pieces that went into it. I'm also very focused on the integration. As you know there is always some fallout as you go through an integration process, whether you lose a key rep here or there, or some personnel. So, we were just taking a good solid approach to the planning process of how we look at it, and we looked at the guidance and we felt, at this point, that was the right approach to take.

Obviously, as I get to learn the business more and we see where things go and how the market evolves, I'm excited about what opportunities get created that I see that are out there for us to leverage. But at this point, just a little premature as we go through that integration.

21.     The statements contained in ¶¶ 17-20 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company would not be able to meet revenue guidance provided to investors; (2) as such, the Company would need to revise its prior guidance; and (3) as a result, Defendants' statements about the Company's business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### The Truth Emerges

22.     On April 27, 2017, the Company issued a press release announcing the departure of two executive officers and lowering guidance for the full year of 2017, stating in relevant part:

**Synchronoss Announces Management Changes**

*Company Issues Preliminary First Quarter 2017 Results*

9

- *Founder and Chairman Stephen Waldis to Reassume CEO Role*
- *Company Veteran Lawrence Irving to Return to the CFO Role*
- *Ronald Hovsepian and John Frederick Step Down as CEO and CFO*

BRIDGEWATER, N.J.--(BUSINESS WIRE)--Apr. 27, 2017-- Synchronoss Technologies, Inc. (NASDAQ:SNCR), the leader in mobile cloud innovation for mobile carriers, enterprises, retailers and OEMs around the world, today announced that company founder and Chairman of the Board of Directors *Stephen Waldis will return to the role of Chief Executive Officer, effective immediately. Ronald Hovsepian, who previously served as Chief Executive Officer, will be leaving to pursue other interests.* Mr. Hovsepian will serve as a consultant to the company to ensure a seamless transition.

Synchronoss also announced that Lawrence Irving has been named Chief Financial Officer. Mr. Irving served as CFO for Synchronoss from July 2001 until April 2014 and played a crucial role in the company's development during that time*. John Frederick, who served as Chief Financial Officer prior to Mr. Irving's appointment, will be leaving to pursue other interests.*

Steve founded and led Synchronoss for 17 years and has a deep understanding of the carrier market, the company's SNCR 3.0 strategy and customers around the world. The Board of Directors has the utmost confidence in Steve and the executive leadership team to focus on execution, capitalize on the market opportunity for cloud solutions and services, successfully integrate the Intralinks enterprise acquisition, and drive Synchronoss to long-term profitable growth and sustainable cash flow. The Board of Directors thanks Ron and John for their service and wishes them the best in their future endeavors.

"I am incredibly passionate about Synchronoss," said Stephen Waldis, founder, chairman and chief executive officer. "I look forward to working with the entire team to drive success for our customers, partners, employees and shareholders. I am pleased that Larry is rejoining Synchronoss along with me. His extensive experience and deep knowledge of the company's business and financial underpinnings will be major assets to me and the management team."

Preliminary First Quarter of 2017 Results
*Based on preliminary financial information, Synchronoss expects total revenue for the first quarter of 2017 to be $13 million to $14 million less than the company's previously announced guidance.* Operating margins are expected to be 8% to 10%, which are less than previously announced guidance. First quarter of 2017 preliminary results are subject to change based on the completion of the company's quarter-end review process.

> "With a track record of meeting or exceeding expectations, we are of course disappointed with our Q1 performance in this first quarter following our acquisition of Intralinks," said Mr. Waldis. "***In view of the Company's performance in the first quarter, we expect this will impact our full year guidance***. We intend to manage our expenses in line with our revenues to generate strong cash flow for the year. We continue to believe in our long-term strategic vision, while executing on our combined synergies. We remain confident in our long-term growth opportunities and strong relationships with our customers, and we are committed to delivering strong returns to our shareholders. We will share additional information, including updated full year guidance, on our May 9th earnings call."

(Emphasis added).

23. On this news, shares of Synchronoss plummeted $11.33 per share or over 46% from its previous closing price on unusually heavy volume to close at $13.29 per share on April 27, 2017, damaging investors.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired the publicly traded securities of Synchronoss during the Class Period and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

25. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

26. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

27. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

28. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Defendants' acts as alleged violated the federal securities laws;

(b) whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the business, operations and management of the Company;

(c) whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(e) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

29. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of

individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

30. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b) Such omissions and misrepresentations were material;

(c) The Company shares met the requirements for listing, and were listed and actively traded on NASDAQ, a highly efficient and automated market;

(d) As a public issuer, the Company filed periodic public reports with the SEC during the Class Period;

(e) The Company regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(f) The Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available;

(g) the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities;

(h) Plaintiff and members of the Class purchased, acquired and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented

material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts and

(i) Unexpected material news about the Company was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

31. Based on the foregoing, the market for the Company's securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

32. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I

### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

33. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

34. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

35. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to

disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

36.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

37.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

38.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other the Company personnel to members of the investing public, including Plaintiff and the Class.

39. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

40. Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

41. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

42. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of the Company's securities during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

43. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

44. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct

of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's misstatement of revenue and profit and false financial statements.

45.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

46.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

47.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

<b><u>PRAYER FOR RELIEF</u></b>

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)     awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c)     awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: May 1, 2017                                     Respectfully submitted,


**THE ROSEN LAW FIRM, P.A.**

/s/Laurence M. Rosen
Laurence M. Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com


Counsel for Plaintiff