James E. Cecchi
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
(973) 994-1700

*Counsel for Lead Plaintiff and*
*Liaison Counsel for the Class*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE SYNCHRONOSS TECHNOLOGIES, INC. SECURITIES LITIGATION | Civil Action No. 17-2978 (ZNQ) (LHG) |
| | **Class Action** |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | |

# LEAD PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND NOTICE TO THE CLASS PURSUANT TO FED. R. CIV. P. 23

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

I.      INTRODUCTION ........................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND OF THE
        LITIGATION ...............................................................................................4

III.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY
        APPROVAL ..................................................................................................9

     A.   DESCRIPTION OF THE SETTLEMENT AND PLAN OF ALLOCATION ..................9

     B.   STANDARD FOR PRELIMINARY APPROVAL OF A SETTLEMENT UNDER
         RULE 23 ..................................................................................................11

         1.   The Settlement Is the Result of Good Faith, Arm's-Length
            Negotiations by Well-Informed and Experienced Counsel ...............14

         2.   The Settlement Provides a Substantial Benefit for the Class.............16

         3.   The Relief Provided by the Settlement Is Adequate When Weighed
            Against the Risks of Litigation...........................................................17

IV.    THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS TO
        PERMIT DISSEMINATION OF THE NOTICE .........................................19

     A.   THE CLASS MEMBERS ARE SO NUMEROUS THAT JOINDER WOULD BE
         IMPRACTICABLE ......................................................................................21

     B.   THERE ARE QUESTIONS OF LAW OR FACT COMMON TO THE CLASS ..........21

     C.   LEAD PLAINTIFF'S CLAIMS ARE TYPICAL OF THE CLASS'S CLAIMS ...........22

     D.   LEAD PLAINTIFF HAS FAIRLY AND ADEQUATELY PROTECTED THE
         INTERESTS OF THE CLASS.........................................................................23

     E.   QUESTIONS COMMON TO THE CLASS PREDOMINATE OVER INDIVIDUAL
         QUESTIONS AND A CLASS ACTION IS SUPERIOR TO OTHER AVAILABLE
         MEANS OF ADJUDICATION ......................................................................26

V.      NOTICE OF THE SETTLEMENT SHOULD BE APPROVED .................28

VI.   THE PROPOSED SCHEDULE SHOULD BE APPROVED .....................31

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alves v. Main*,
No. 01-cv-789, 2012 WL 6043272 (D.N.J. Dec. 4, 2012) ................................13

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)...............................................................................19, 26, 28

*In re AOL Time Warner ERISA Litig.*,
No. 02 CIV. 8853 SWK, 2006 WL 2789862 (S.D.N.Y. Sept. 27, 2006) ........................................................................................................18, 19

*Atis v. Freedom Mortg. Corp.*,
No. 15-3424, 2018 WL 5801544 (D.N.J. November 6, 2018).........................11

*In re Auto. Refinishing Paint Antitrust Litig.*,
No. MDL NO. 1426, 2004 WL 1068807 (E.D. Pa. May 11, 2004).................13

*Chatelain v. Prudential-Bache Sec., Inc.*,
805 F. Supp. 209 (S.D.N.Y. 1992) ...................................................................15

*In re CIGNA Corp.*,
No. 02-8088, 2007 WL 2071898 (E.D. Pa. July 13, 2007) ..............................13

*Demmick v. Cellco P'ship*,
No. CV 06-2163, 2015 WL 13643682 (D.N.J. May 1, 2015)...........................17

*In re EVCI Career Colls. Holding Corp. Secs. Litig.*,
No. 05-cv-10240, 2007 WL 2230177 (S.D.N.Y July 27, 2007) ......................13

*Fogarazzao v. Lehman Bros.*,
232 F.R.D. 176 (S.D.N.Y. 2005).....................................................................24

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ...............................................................................13

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) .............................................................................17

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000)..................................................................21, 22

*In re Lucent Techs., Inc., Sec. Litig.*,
307 F. Supp. 2d 633 (D.N.J. 2004)............................................................22, 23

*Lupian v. Joseph Cory Holdings*,
No. 16-CV-5172, 2019 WL 3283044 (D.N.J. July 22, 2019) ...........................11

*Mazon v. Wells Fargo Bank, N.A.*,
No. CIV. 10-700, 2011 WL 6257149 (D.N.J Dec. 14, 2011) ...........................17

*McRobie v. Credit Prot. Ass'n*,
No. 5:18-CV-00566, 2020 WL 6822970 (E.D. Pa. Nov. 20, 2020)............11, 12

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
961 F. Supp. 2d 708 (E.D. Pa. 2014)................................................................12

*In re Ocean Power Techs., Inc.*,
No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016).......................29

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985)...........................................................................................27

*In re Prudential Ins. Co. Am. Sales Pract. Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ........................................................................12, 23

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
No. 04–374 (JAP), 2008 WL 9447623 (D.N.J. Dec. 9, 2008) ....................20, 21

*Shapiro v. All. MMA, Inc.*,
No. 17-2583, 2018 WL 3158812 (D.N.J. June 28, 2018) ..........................*passim*

*Smith v. Merck & Co.*,
No. 13-2970 (MAS) (LHG), 2019 WL 3281609 (D.N.J. July 19,
2019) ...........................................................................................................11, 21

*Smith v. Suprema Specialties, Inc.*,
No. 02–168 (WHW), 2007 WL 1217980 (D.N.J. Apr. 23, 2007).....................27

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273, 301 (3d Cir. 2011) ..............................................................21, 22

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
No. 3:15-CV-07658-MAS-LHG, 2020 WL 3166456 (D.N.J. June
15, 2020) ..................................................................................................17

*Varacallo v. Massachusetts Mut. Life Ins. Co.*,
226 F.R.D. 207 (D.N.J. 2005)...................................................................23

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)...................................................................................22

*Wal-Stores, Inc. v. Visa U.S.A., Inc.*
396 F.3d 96 at 116 (2d Cir. 2005) ...................................................14, 28

*In re Wilimington Tr. Sec. Litig.*,
No. 10-CV-0990-ER, 2018 WL 3369674 (D. Del. July 10, 2018) .............12, 14

*Wood v. Saroj & Manju Invs. Philadelphia LLC*,
No. 19-2820-KSM, 2020 WL 7711409 (E.D. Pa. Dec. 28, 2020) ....................11

**Statutes**

15 U.S.C. §78u-4(a)(7) ......................................................................29, 30

15 U.S.C. § 78u-4(a)(3)(B)(iii) *amended by* 15 USC § 77z-1..................................5

15 U.S.C. §78j..................................................................................5, 6,11

15  U.S.C §78t....................................................................................5,6

Fed. R. Civ. P. 23 ..........................................................................*passim*

**Other Authorities**

7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*,
§ 1788, at 528 (1986)...............................................................................26

4 Herbert B. Newberg & William B. Rubenstein, *Newburg on Class
Actions* §. 13:18 (5th ed. 2021) (Westlaw) ...............................................20

Lead Plaintiff Employees' Retirement System of the State of Hawaii ("Lead Plaintiff" or "Hawaii ERS") respectfully submits this memorandum of law in support of its unopposed motion for preliminary approval of settlement of its claims ("Settlement") against defendants Synchronoss Technologies, Inc. ("Synchronoss" or the "Company") and Karen Rosenberger (collectively, "Defendants," and together with Hawaii ERS, the "Settling Parties"), for appointment of Lead Counsel as Class Counsel, and for approval of the forms and manner of providing notice of the Settlement to the Class.

## I.   INTRODUCTION

As set forth in the Stipulation of Settlement dated August 19, 2021, ("Settlement Agreement"), Lead Plaintiff, on behalf of itself and the putative Class, has agreed to settle all claims asserted in the above-captioned action against Defendants Synchronoss and Karen Rosenberger, in exchange for $19,000,000 in cash ("Settlement Amount"). This proposed Settlement was reached after full consideration of the strengths and weaknesses of the parties' respective claims and defenses, and following arm's length mediation overseen by an experienced mediator, Jed D. Melnick, Esq. of JAMS.

The Settlement was reached following more than a month of efforts to resolve the Action.[1]  The parties first held a virtual mediation session on May 7, 2021.  That day-long session was mediated by Mr. Melnick.  When efforts to resolve the matter did not succeed on May 7, Mr. Melnick continued his outreach to the parties to determine whether the remaining differences could be resolved.  With his assistance, the partiers were ultimately able to reach an agreement in principle to resolve the Action.  The Settlement was negotiated by counsel with extensive experience in securities class actions who carefully evaluated the merits of Lead Plaintiff's claims, the risks to recovery, and the likelihood of ultimate success.  With the benefit of the parties' settlement memoranda and mediation communications, and a thorough understanding of the strengths and weaknesses of their positions, the Settling Parties reached an agreement in principle on June 22, 2021, to resolve the case for $19 million cash payment on behalf of Defendants.

Lead Plaintiff and its counsel approve of the Settlement.  Lead Plaintiff is a sophisticated institutional investor with billions of dollars of assets under management and experience in securities fraud litigation.  Lead Counsel have substantial securities litigation experience, have litigated hundreds of cases to resolution, and are recognized as leading experts in the field.  Lead Plaintiff retained

---

[1] All capitalized terms not otherwise defined here have the same meanings as in the Stipulation.  *See* Exhibit A.  Citations are omitted and emphasis is added throughout, unless otherwise noted.

Lead Counsel specifically because of the firm's expertise and acumen in complex securities matters like this one. Lead Plaintiff and Lead Counsel understood that there were serious risks in continued litigation, and while Lead Plaintiff believes strongly in the merits of its case, it recognizes that Defendants have similar confidence in the merits of their defenses. At trial, Lead Plaintiff would have the burden of providing each of the element of their claims, which arise under the Securities Exchange Act of 1934 ("1934 Act"). Trial would be lengthy and very expensive, and either party could prevail.

At the preliminary approval stage of settlement of a class action under Rule 23, the Court is asked to: (i) evaluate the terms of the Settlement under Rule 23(e) and under the Third Circuit's standards, and (ii) certify the Class for settlement purposes. As set forth below, the proposed Settlement satisfies the applicable standards. The Settlement is a very good result for the Class, providing for an all-cash payment of $19 million. If the Court grants preliminary approval of the Settlement, notice will be given to the Class, informing them of, among other things, the Class members' right to object to or opt out of the Settlement and the deadlines for doing so, the claims submission procedure and deadline, and the date set for a final Settlement Hearing. Lead Plaintiff respectfully requests that the Court take this first step in the approval process and grant preliminary approval of the proposed Settlement and certify the proposed Class for the purposes of settlement.

## II.   FACTUAL AND PROCEDURAL BACKGROUND OF THE LITIGATION

This action is pending before the Honorable Zahid N. Quraishi in the United States District Court for the District of New Jersey and was brought on behalf of all persons and entities who purchased or otherwise acquired common stock of Synchronoss at any time in the period of October 28, 2014 to June 13, 2017, inclusive, and were damaged thereby.

On May 1, 2017, an initial class action complaint in this Action, No. 17-cv-02978. (ECF No. 1.) A second class action complaint was filed on May 2, 2017, *College v. Synchronoss Technologies, Inc. et al.*, No. 17-cv-03005 (D.N.J.). On June 8, 2017, a third class action complaint was filed, *Flack v. Synchronoss Technologies, Inc. et al.*, No. 17-cv-04147 (D.N.J.). On June 14, 2017, a fourth class action complaint was filed in *City of Atlanta Firefighters' Pension Fund v. Synchronoss Technologies, Inc., et al.*, No. 17-cv-04326 (D.N.J.).

On June 30, 2017, Hawaii ERS moved for consolidation of the related actions and for appointment as Lead Plaintiff, and for approval of its selection of lead and liaison counsel. (ECF No. 10.)

On September 6, 2017, the Court granted Hawaii ERS's motion and consolidated the above-referenced cases. (ECF No. 20.) In the same order, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by Section 101(a) of the Private Securities

Litigation Reform Act of 1995, the Court appointed Hawaii ERS as Lead Plaintiff of the consolidated action, Grant & Eisenhofer P.A. as Lead Counsel, and Carella Byrne Cecchi Olstein Brody & Agnello as Liaison Counsel.  *Id.*

On November 20, 2017, Hawaii ERS filed its Consolidated Class Action Complaint in the U.S. District Court for the District of New Jersey.  (ECF No. 38.)  The complaint alleged violations of Section 10(b) and Section 20(a) of the Exchange Act and asserted that Synchronoss—at the direction of then-CEO Stephen Waldis and then-CFO Karen Rosenberger—prematurely recognized contractual revenues and knowingly overstated Company revenues to investors for the fiscal years 2014-2016.  The complaint further alleged that Defendants also inflated Synchronoss's revenues for a deal involving Sequential Technology International, LLC ("Sequential"), whereby the Company received a one-time $9.2 million license fee, which the Company allegedly improperly booked as revenue for the purported purpose of falsely meeting earnings targets.

On February 2, 2018, Defendants filed a motion to dismiss the original complaint.  (ECF No. 45.)  Hawaii ERS filed its opposition on March 19, 2018.  (ECF No. 48.)  Defendants filed their reply on May 11, 2018.  (ECF No. 58.)

On August 24, 2018, before Defendants' motion to dismiss was decided, Hawaii ERS filed a Consolidated Amended Class Action Complaint ("Consolidated Amended Complaint").

On November 6, 2018, Defendants filed a motion to dismiss the Consolidated Amended Complaint.  (ECF No. 66.)  Hawaii ERS filed its opposition on December 14, 2018.  (ECF No. 68.)  Defendants filed their reply on February 5, 2019.  (ECF No. 74.)

On June 28, 2019, the Court issued an opinion granting Defendants' motion to dismiss.  The Court also granted Hawaii ERS leave to replead.  (ECF No. 76.)

On August 14, 2019, Hawaii ERS filed a Second Amended Class Action Complaint ("Second Amended Complaint") (ECF No. 81).   This operative complaint, like the original complaint, alleged that Defendants had issued false and misleading statements regarding the Company's revenues in violation of Section 10(b)(5) and Section 20(a) of the Exchange Act by prematurely recognizing revenue from contracts before receiving a signed contract, in violation of GAAP, and knowingly concealing from investors that  the Company had improperly recognized revenue from the Sequential transaction to meet the Company's revenue targets. The Second Amended Complaint added allegations from five additional confidential witnesses—former employees at Synchronoss concerning the alleged scheme of fraud and concerning Defendants' scienter at the time of the misstatements.

On October 4 2019, Defendants moved to dismiss the Second Amended Complaint.  (ECF No. 84.)  Lead Plaintiff filed its opposition on November 25, 2019. (ECF No. 85)  Defendants filed a reply on January 10, 2020.  (ECF No. 90).

On May 29, 2020, the Court issued its opinion on Defendants' motion to dismiss the Second Amended Complaint. The Court granted-in-part and denied-in-part the motion, which resulted in, among other things, the dismissal of all claims against Synchronoss' former CEO Stephen G. Waldis and claims based upon alleged manipulation of expenses and alleged improper accounting for acquisitions and divestures, and Defendants' forward-looking statements. (ECF No. 92.)

Following the Court's decision sustaining part of the Second Amended Complaint, the parties begin to negotiate concerning a schedule for and the scope of discovery. The parties began exchanging discovery in Fall 2020.

On October 30, 2020, Hawaii ERS filed a motion for class certification, which included as an exhibit the declaration of Hawaii ERS's class certification expert, Benjamin Sacks. (ECF No. 120.) Before filing their opposition to the Hawaii ERS's class certification motion, Defendants took deposition testimony pursuant to Rule 30(b)(6) of a representative of Hawaii ERS. Defendants also took deposition testimony of Mr. Sacks. On February 12, 2021, Defendants filed their opposition, supported by the report of Defendants' class certification expert, Dr. Mukesh Bajaj. (ECF No. 137.) Thereafter, Hawaii ERS took the deposition of Dr. Bajaj. On March 26, 2021, Hawaii ERS filed its reply in support of class certification, along with a rebuttal report from Mr. Sacks. (ECF No. 144) The motion for class certification has been fully submitted since April 20, 2021.

After filing their motion in opposition to class certification, Counsel for Defendants contacted Lead Plaintiff's Counsel and asked whether Lead Plaintiff would be open to engaging in confidential mediation to reach a settlement. Lead Plaintiff agreed. Before the mediation, Lead Plaintiff's Counsel conferred among themselves and with Lead Plaintiff. They also consulted with Benjamin Sacks of The Brattle Group to assist with an evaluation of potential damages to the putative Class.

On May 7, 2021, the Settling Parties and their counsel participated in a full-day mediation with Jed Melnick, Esq., of JAMS ADR. Mr. Melnick has served as a full-time mediator in 2005. In that time, Mr. Melnick has resolved over one thousand disputes, with an aggregate value in the billions of dollars. In the weeks following the mediation session, counsel for the parties continued to negotiate with Mr. Melnick's assistance. Mr. Melnick then made a mediator's proposal to resolve the Action, which the Settling Parties each accepted on a double-blind basis on June 22, 2021. The Settling Parties then executed a Binding Term Sheet on June 28, 2021, memorializing their agreement, which included, among other things, the Settling Parties' agreement to fully and finally resolve the Action in return for a settlement payment of $19,000,000 for the benefit of the Class, subject to the negotiation of the terms of the Stipulation of Settlement and approval by the Court.

On June 28, 2021, Lead Plaintiff and Defendants reached an agreement to settle the claims for a sum of $19,000,000.  On June 29, 2021, counsel for the parties filed a Joint Motion for a Temporary Stay to Facilitate Settlement to notify the Court that the parties had reached an agreement in principle to settle the Action.  (ECF No. 157.)

## III.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.   DESCRIPTION OF THE SETTLEMENT AND PLAN OF ALLOCATION

The Proposed Settlement provides that Defendants will pay $19,000,000.00 in cash into an Escrow Account for the benefit of the Settlement Class.  This consideration, after deduction of any attorneys' fees and litigation expenses, as provided for in the Settlement Agreement or approved by the Court, and less any fees associated with notifying the class and administering the settlement consideration (*i.e.*, the "Net Settlement Fund"), will be distributed among the Settlement Class Members who submit timely and valid Proof of Claim and Release Forms in accordance with the Plan of Allocation set forth in the Notice.  Lead Plaintiff believes that the Proposed Settlement is a very good recovery based on the claims asserted in the Consolidated Actions, and is in all respects, fair, adequate, reasonable, and in the best interests of the Settlement Class.

Under the Plan of Allocation, the Claims Administrator, selected by Lead Plaintiff based on its experience in handling securities cases, will calculate each

Authorized Claimant's Recognized Loss based on the information supplied in each Claimant's Proof of Claim. The Plan of Allocation allocates the Net Settlement Fund to Settlement Class Members on a *pro rata* bases after determining the Settlement Class Members' Recognized Loss Amounts. The Plan of Allocation takes into account the consideration that an Authorized Claimant used to purchase his/her/its Synchronoss shares and, if the Authorized Claimant sold the shares, when the sale occurred.

The Plan of Allocation was determined with the assistance of Lead Plaintiff's expert, Benjamin Sacks, of The Brattle Group, who has significant experience with damages calculations and plan of allocation development, as well as with the assistance of the experienced settlement administrator. The Plan of Allocation calculates a Recognized Loss Amount in  for Authorized Claimants who purchased shares of Synchronoss common stock on or between October 28, 2014, through and including June 13, 2017, based on an inflation ribbon as constructed by Mr. Sacks and pursuant to traditional damages theories associated with violations of Section 10(b)(5) of the Exchange Act.

Lead Plaintiff submits that the Plan of Allocation is fair and reasonable, and should be approved together with the Settlement at the Settlement Hearing.

**B.    STANDARD FOR PRELIMINARY APPROVAL OF A SETTLEMENT UNDER RULE 23**

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of class claims.  "Preliminary approval of a proposed class-action settlement is left to the discretion of the trial court, and is based on an examination of whether the proposed settlement is 'likely' to be approved under Rule 23(e)(2).  *Wood v. Saroj & Manju Invs. Phila. LLC*, No. 19-2820-KSM, 2020 WL 7711409, at *10 (E.D. Pa. Dec. 28, 2020) (citing Fed. R. Civ. P. 23(e)(1)(B)(i)). Judicial policy in this Circuit "strongly favors settlement, particularly in class action matters."  *Smith v. Merck & Co.*, No. 13-2970 (MAS) (LHG), 2019 WL 3281609, at *4 (D.N.J. July 19, 2019); *see Lupian v. Joseph Cory Holdings*, No. 16-CV-5172, 2019 WL 3283044, at *5 (D.N.J. July 22, 2019) ("The Third Circuit has observed that there is 'an overriding public interest in settling class action litigation, and it should therefore be encouraged.'"); *McRobie v. Credit Prot. Ass'n*, No. 5:18-CV-00566, 2020 WL 6822970, at *3 (E.D. Pa. Nov. 20, 2020) (same).

"Review of a proposed class action settlement is a two-step process: (1) preliminary approval [,] and (2) a subsequent fairness hearing."  *Atis v. Freedom Mortg. Corp.*, No. 15-03424, 2018 WL 5801544, at *2 (D.N.J. Nov. 6, 2018).  At the preliminary approval stage, "the parties submit the proposed settlement to the court, which makes a preliminary fairness evaluation."  *Id*.   The preliminary approval process "is less formal than final approval."  *Shapiro v. All. MMA, Inc.*,

No. 17-2583, 2018 WL 3158812, at *2 (D.N.J. June 28, 2018).   In considering whether to grant preliminary approval, courts must weigh whether the settlement proposal is "fair, reasonable, and adequate."   *McRobie*, 2020 WL 6822970, at *3 ("[A]proposed settlement agreement may only be approved by a court if the court finds it to be fair, reasonable, and adequate"); *In re Prudential Ins. Co. Am. Sales Pract. Litig. Agent Actions*, 148 F.3d 283, 316–17 (3d Cir. 1998) (same).

To determine whether a proposed settlement meets the "fair, reasonable, and adequate" threshold, the Court weighs whether "the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval."   *In re Nat'l Football League Players' Concussion Inj. Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) (quoting *Thomas v. NCO Fin. Sys.*, No. CIV.A 00–5118, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002)).   A settlement falls within the "range of possible approval," if there is a basis for presuming that fairness, adequacy, and reasonableness standard is satisfied.   *In re Wilmington Tr. Sec. Litig.*, No. 10-CV-0990-ER, 2018 WL 3369674, at *4 (D. Del July 10, 2018) (citing *Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007)).

A settlement is entitled to a presumption of fairness when the court finds "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the

proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995). The opinion of experienced counsel supporting the settlement is also entitled to considerable weight in a court's evaluation of a proposed settlement. *In re Auto. Refinishing Paint Antitrust Litig.*, No. MDL NO. 1426, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (holding that the procedure for reaching settlement was fair where the settlement was the product of an arm's-length negotiation between experienced counsel on both sides, each with a comprehensive understanding of the strengths and weaknesses of the parties' claims); *In re CIGNA Corp.*, No. 02-8088, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) (same). Finally, the fact that a settlement was negotiated with the assistance of an experienced mediator weighs in favor of preliminary approval, because the participation of a mediator in settlement negotiations "virtually ensures that the negotiations were conducted at arm's length and without collusion between the parties." *Alves v. Main*, No. 01-cv-789, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012); *see also Shapiro*, 2018 WL 3158812, at *2.

Moreover, under the PSLRA, a settlement reached "under the supervision of appropriately selected [L]ead [P]laintiffs is entitled to an even greater presumption of reasonableness." *In re EVCI Career Colls. Holding Corp. Secs. Litig.*, No. 05-cv-10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

As demonstrated below, the proposed Settlement merits preliminary approval because it is both procedurally and substantively fair.

### 1.    The Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed and Experienced Counsel

Courts presume that a proposed settlement is fair and reasonable when it results from arm's-length negotiations between well-informed counsel.  *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting a strong "presumption of fairness" where a settlement is a product of arm's-length negotiations conducted by experienced, capable counsel after meaningful discovery); *see also Wilmington Tr. Sec. Litig.*, 2018 WL 3369674, at *5 (holding that there was "a reasonable basis for presuming that the fairness, adequacy, and reasonableness of the settlement agreements" because the agreements "were reached at arms-length . . . between well-informed and experienced counsel that were agreed to after extensive fact and expert discovery").

Here, the Settlement is the product of informed arm's-length negotiations, including extensive negotiations between counsel with the assistance of an experienced mediator.  As referenced above, counsel for Defendants contacted Lead Plaintiff's counsel after the parties had engaged in extensive fact discovery and had fully briefed a motion for class certification.  The parties subsequently agreed to enter into mediation conducted by an independent, experienced mediator with JAMS.  Prior to the mediation, Lead Plaintiff's counsel consulted with a financial

14

expert to assist with an evaluation of the possible recoverable damages at trial. Lead Plaintiff's counsel also conferred repeatedly with Lead Plaintiff concerning the mediation process and the prospects for recovery should the matter not settle and instead proceed to trial. After the parties engaged in a mediation on June 7, 2021, and thereafter held several additional weeks of negotiations between counsel with Mr. Melnick's assistance, the parties were able to reach an agreement in principle.

The Court also considers the experience and judgment of the parties involved in negotiating a settlement when it determines whether it approve the settlement. Lead Counsel has extensive experience in prosecuting securities class actions throughout the country and is among the nation's leading securities class action litigation firms. Lead Counsel's firm résumés were previously submitted to the Court(ECF No.10-2), following which the Court granted Lead Plaintiff's request to designate the firm as Lead Counsel. (ECF No. 20.) Accordingly, Lead Counsel's judgment that the Settlement is in the best interest of the Class should be given considerable weight. *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992). This Action also included the active participation of the Court-appointed Lead Plaintiff—the Employees' Retirement System of the State of Hawaii—a sophisticated institutional investor.

Given the particular circumstances of this Action, the Court can conclude that the Parties and their counsel were well informed prior to reaching the Settlement.

That the Settlement is the product of arm's-length negotiations before a respected and independent mediator, has been approved by the Lead Plaintiff, and was entered into by experienced and informed counsel, demonstrates that the process by which the Settlement was reached is procedurally fair. The Settlement is, therefore, presumptively fair, reasonable, and adequate.

### 2. The Settlement Provides a Substantial Benefit for the Class

The Settlement provides for a Settlement Fund of $19,000,000 in cash. This recovery is a substantial result for the Class, especially in light of the history of this case and the risks of continued litigation and trial. The benefit of the present Settlement must be compared to the risk that no recovery or a lesser recovery might be achieved after trial and likely appeals, most likely years into the future.

The Settlement Amount, after reduction for Court approved attorneys' fees and expenses, will be allocated to eligible members of the Class based on the Plan of Allocation. The Plan of Allocation proposed by Lead Plaintiff, as set forth in the Notice, was developed in consultation with Lead Plaintiff's damages expert, Benjamin Sacks of The Brattle Group, and it provides a fair and reasonable method to allocate the Settlement among Class Members who submit valid Claim Forms.

The Proposed Settlement will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants. Similar plans of allocation,

that allocated settlements in this manner have repeatedly been approved by Courts in this District. *See In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 3:15-CV-07658-MAS-LHG, 2020 WL 3166456, at \*9 (D.N.J. June 15, 2020); *Mazon v. Wells Fargo Bank, N.A.*, No. CIV. 10-700, 2011 WL 6257149, at \*1 (D.N.J. Dec. 14, 2011); *Demmick v. Cellco P'ship*, No. 06-2163 (JLL), 2015 WL 13643682, at \*3 (D.N.J May 1, 2015).

The Proposed Settlement's benefit to the Class and the fact that all Class Members will be treated the same under the proposed Plan of Allocation support preliminary approval of the Settlement.

### 3. The Relief Provided by the Settlement Is Adequate When Weighed Against the Risks of Litigation

To evaluate the substantive fairness and adequacy of a settlement, courts in this Circuit primarily consider the following factors: "(1) the complexity, expense, and likely duration of the litigation . . .; (2) the reaction of the class to the settlement . . .; (3) the stage of the proceedings and the amount of discovery completed . . .; (4) the risks of establishing liability . . .; (5) the risks of establishing damages . . .; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . ; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . .." *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

The terms of the proposed Settlement here are clearly "within the range of possible approval," especially given the substantial risks and expense plaintiffs face in continuing to litigate this case. *See Shapiro*, 2018 WL 3158812, at *3 (finding that, the *Girsh* factors weighed in favor of preliminary approval in part because, "securities actions are 'inherently complex; matters that may become prohibitively expensive as they proceed into discovery").

Although Lead Plaintiff and Lead Counsel believe that the claims asserted in the Action against Defendants are meritorious, continued litigation is risky. In particular, Lead Plaintiff faced significant hurdles associated with continuing engagement in lengthy and challenging discovery, and would likely have faced additional challenges at the summary judgment phase, as Defendants have challenged Lead Plaintiff's causation and scienter allegations, among other things. If those significant hurdles were overcome, Lead Plaintiff would have faced a complex trial with issues that are likely to be unfamiliar to the fact-finders, and potential appeals following any favorable judgment, processes which would no doubt take years to resolve. Any judgment Lead Plaintiff might obtain against Synchronoss and Ms. Rosenberger could also face an uncertain recovery. The Court should thus consider that the Settlement provides for payment to the Class now, without incurring any addition costs, rather the mere possibility of some recovery years down the road. *See In re AOL Time Warner ERISA Litig.*, No. 02 CIV. 8853

SWK, 2006 WL 2789862, at *9 (S.D.N.Y. Sept. 27, 2006) (finding a settlement adequate where it provided for immediate recovery to the settlement class "in light of the considerable risks of litigation"). In light of the foregoing factors, Lead Counsel and Lead Plaintiff believe that the proposed Settlement is in the best interests of the Class and respectfully submit that the Settlement falls well within the range of possible approval.

For these and all of the foregoing reasons, the Court should grant preliminary approval of the Settlement and direct that notice of the Settlement be given to members of the Class.

## IV. THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS TO PERMIT DISSEMINATION OF THE NOTICE

In addition to determining whether the proposed Settlement is fair and reasonable, the Court must consider whether to certify the Settlement Class conditionally for settlement purposes. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "The type of certification approval that courts provide with a preliminary settlement approval is accorded under a more relaxed standard" than in the typical certification process. 4 Herbert B. Newberg & William B. Rubenstein, *Newburg on Class Actions* § 13:18 (5th ed. 2021) (Westlaw). The Court may certify class actions for the sole purpose of settlement.

Certification of a settlement class is appropriate where the proposed class and proposed class representative meet the four requirements of Rule 23(a): (1)

"numerosity"—the members of the class are so numerous that joinder would be impracticable; (2) "commonality" —there are common questions of law and fact that apply to all class members; (3) "typicality"—the claims of the proposed class representative are typical of the class, and there are no unique defenses against the class representative; and (4) "adequacy"—the class representative will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

In addition, certification of a class for settlement purposes requires a showing that the requirements of Rule 23(b)(3) are met: that questions of law or fact common to the members of the class predominate over any individual issues of rule or law, and that a class action is superior to other available methods to adjudicate the controversy.  Fed. R. Civ. P. 23(b)(3).  Securities class actions are particularly well-suited to class treatment and have "repeatedly been held to be  prime candidates for class certification."  *In re Royal Dutch/Shell Transp. Sec. Litig.*, No. 04–374 (JAP), 2008 WL 9447623, at *14 (D.N.J. Dec. 9, 2008).

Here, the parties have stipulated to the certification of the Settlement Class for settlement purposes only.  Settlement Agreement ¶ 3.1.  Lead Plaintiff thus requests that the Court certify the Settlement Class defined in the Stipulation, comprising "all persons or entities who, directly or through an intermediary, purchased or otherwise acquired Synchronoss common stock at any time during the period of October 28, 2014 through June 13, 2017 inclusive."  Settlement Agreement ¶ 1.36.  Here, the

proposed Settlement Class meets the requirements of and satisfied Rule 23(a) and 23(b)(3).

### A. THE CLASS MEMBERS ARE SO NUMEROUS THAT JOINDER WOULD BE IMPRACTICABLE

Rule 23(a)(1) requires a class to be so large that joinder of all its members would be "impracticable." Fed. R. Civ. P. 23(a)(1). The prerequisite of numerosity is discharged "where a class is likely to exceed forty members." *Smith*, 2019 WL 3281609, at *2. Although the exact size of the Settlement Class is not yet known, the numerosity requirement is generally satisfied in a securities class action where a when a corporation has millions of shares trading on a national exchange. *See In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 175 (E.D. Pa. 2000) (holding that settlement class easily met the numerosity requirement where millions of shares of common stock traded on a national exchange); *Royal Dutch/Shell Transp.*, 2008 WL 9447623, at *13 (same).

### B. THERE ARE QUESTIONS OF LAW OR FACT COMMON TO THE CLASS

Rule 23(a)(2) requires "that questions of law or fact exist that are common to the class." *Id*. "Like numerosity, this requirement has been applied liberally in securities fraud litigation . . .." *Ikon Off. Sols.*, 194 F.R.D. at 176. A finding of commonality does not require that the Class's claims are identical. *Sullivan v. DB Invs., Inc.* 667 F.3d 273, 301 (3d Cir. 2011). Rather, "commonality is satisfied where common questions generate common answers 'apt to drive the resolution of

the litigation.'" *Sullivan*, 667 F.3d at 299 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  As such, the commonality requirement is easily met if plaintiffs charge defendants with a common course of misconduct, particularly where, as here, the alleged misrepresentations were presented the company's public filings and statements.  *Ikon Off. Sols.*, 194 F.R.D. at 176 (finding the commonality easily satisfied where the basis of the action was that the defendants issued false and misleading statements under the securities laws); *In re Lucent Techs., Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 640 (D.N.J. 2004) (same).

Here, the requirement of commonality is satisfied because the case arises from common questions of law and fact pertaining to whether false statements of material fact were made in Synchronoss's public statements, whether Defendants acted with due care in misrepresenting, or omitting, material information concerning Synchronoss's revenues, whether the price of Synchronoss stock was artificially inflated by reason of the alleged misrepresentations, whether market efficiency has been established as required for a presumption of reliance and  the extent of damages sustained by members of the Class, and the appropriate measure of damages.

## C.   LEAD PLAINTIFF'S CLAIMS ARE TYPICAL OF THE CLASS'S CLAIMS

Putative class representatives' claims must also be typical of those of the class members.  Fed. R. Civ. P. 23(a)(3).  "The 'typicality' requirement is satisfied as long as the Lead Plaintiffs, the other representatives, and the Class 'point to the same broad

course of alleged fraudulent conduct to support a claim for relief.'" *Lucent Techs.*, 307 F. Supp. 2d at 640. Typicality does require identicality. *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 232 (D.N.J. 2005).

Lead Plaintiff's claims are typical of those of the Settlement Class. Lead Plaintiff purchased Synchronoss common stock during the Class Period (ECF No. 10-2) (Certification on Behalf of HIERS and Schedule A) (setting forth purchases and sales of Synchronoss shares from the period October 28, 2014 through June 13, 2017) and was damaged when the truth concerning Synchronoss was revealed to the public. Lead Plaintiff therefore satisfies the typicality requirement.

### D. LEAD PLAINTIFF HAS FAIRLY AND ADEQUATELY PROTECTED THE INTERESTS OF THE CLASS

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. In the Third Circuit, court consideration of this factor has traditionally entailed a two-pronged inquiry: first, that the interests of the representative party not conflict with the interests of Settlement Class Members, and second, that the representative party's counsel is qualified, experienced, and able to conduct the litigation vigorously. *Shapiro*, 2018 WL 3158812, at *5 (citing *In re Prudential*, 148 F.3d at 312). Pursuant to Rule 23(g), adequacy of proposed class counsel is considered separately from the determination of the adequacy of the proposed class representatives. Both prongs of the adequacy requirement are satisfied here.

Lead Plaintiff does not have any interests antagonistic to those of the proposed Settlement Class. Lead Plaintiff has submitted certifications consistent with the PSLRA, indicating that it reviewed the complaint, that it would willingly and capably represent the Class, that it understood its responsibilities under the PSLRA, and that it will not accept any payment for serving as a representative plaintiff beyond its *pro rata* share of any recovery, except reasonable costs and expenses (including lost wages) directly relating to the representation of the Class. (ECF No. 10-2.) Lead Plaintiff is seeking, on its own behalf and on behalf of all Settlement Class Members, to recover from Defendants damages caused by Defendants' alleged unlawful conduct. No evidence exists of any conflict of interests with the Settlement Class. Thus, Lead Plaintiff is an adequate class representative.

Rule 23(g) also requires a court to assess the adequacy of proposed class counsel. To that end, "the court *must* consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class." *Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 182 (S.D.N.Y. 2005).

The Court-appointed firm serving as Lead Counsel, Grant & Eisenhofer P.A. ("Grant & Eisenhofer"), is experienced in class actions and has successfully

prosecuted many securities class actions.  Grant & Eisenhofer is routinely appointed as class counsel for securities class actions in courts across the nation.  Grant & Eisenhofer's firm résumés were previously submitted to the Court.  (ECF No. 10-2.) The Settlement was reached only after Lead Counsel investigated and drafted the initial complaints and the Second Amended Complaint, vigorously opposed and survived Defendants' motions to dismiss, and moved for class certification.  Counsel spent considerable time on this action for the benefit of Synchronoss investors including: conducting a thorough investigation with the help of a private investigator when drafting both the initial amended complaint and the Second Amended Complaint; opposing Defendants' motion to dismiss and motion in opposition to class certification; retaining a damages expert at each stage of the litigation to help assess the total potential classwide damages in the action; conducting document discovery and a deposition in connection with class certification, and participating in extensive and prolonged settlement negotiations with Defendants' counsel.  Lead Counsel's significant securities class action experience enable it to adeptly evaluate cases to determine when a settlement benefits investors, or when the prudent course would be to continue litigation.  Thus, Lead Counsel should be appointed as Class Counsel for the Settlement Class.

### E.    QUESTIONS COMMON TO THE CLASS PREDOMINATE OVER INDIVIDUAL QUESTIONS AND A CLASS ACTION IS SUPERIOR TO OTHER AVAILABLE MEANS OF ADJUDICATION

To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Plaintiffs satisfy the predominance and superiority criteria.

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788 at 528 (3d ed. 1986).  Here, it is plain that common questions exist relating to Defendants' alleged conduct, such as whether their statements and omissions were materially false or misleading, and whether their conduct caused damages to Plaintiffs and the Settlement Class.  If each class member were to bring an individual action, each would be required to demonstrate the same misrepresentations and/or omissions to prove liability.  Thus, this case illustrates the principle that the predominance requirement is "readily met" in many securities fraud class actions.  *Amchem*, 521 U.S. at 625.

Rule 23(b)(3) also requires a finding that the class action mechanism is a superior method of adjudicating the claims of Lead Plaintiff and the Class. The factors relevant to a finding of superiority include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Many of the Settlement Class Members are individuals for whom prosecution of a costly damages action on their own behalf does not provide a realistic or efficient alternative. All outstanding related cases have been consolidated into this Action, in an appropriate forum convenient for all parties. Additionally, Lead Plaintiff expects to encounter no difficulties in the management of this class action and Settlement.

This Court should balance the merits of certifying a class against other possible methods of adjudication. Without securities class actions, investors who have been defrauded by securities law violations, but whose losses do not run into several millions of dollars, would likely have no practical recourse. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available"); *see also Smith v. Suprema Specialties, Inc.*, No. 02–168, 2007 WL 1217980, at *10 (D.N.J. Apr. 23, 2007) ("Class actions are favored in the securities litigation context because they are necessary to

meaningfully enforce the securities laws."); *see also Amchem*, 521 U.S. at 617 ("While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'").  Moreover, a class action avoids the possibility of repetitious litigation and efficiently resolves the claims of the entire Settlement Class at once, conserving judicial resources.  Thus, a class action, for a case such as this, is the superior method of adjudication.

Lead Plaintiff has satisfied all the requirements of Rules 23(a) and (b)(3). The Court should preliminarily certify the Settlement Class for settlement purposes.

## V.      NOTICE OF THE SETTLEMENT SHOULD BE APPROVED

Rule 23 of the Federal Rules of Civil Procedure requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  There are no "rigid rules" to apply when determining the adequacy of notice for a class action settlement, and "the standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness."  *Wal-Mart*, 396 F.3d at 113-14.  Moreover, the content of a notice is generally found to satisfactory if it provides "individual notice to all members who can be identified through reasonable effort."

*In re Ocean Power Techs., Inc.*, No. 3:14-CV-3799, 2016 WL 6778218, at *9 (D.N.J. Nov. 15, 2016).

The proposed Notice (attached as Exhibit A-1 to the Stipulation) advises Class Members of, *inter alia*: (i) the essential terms of the Settlement; (ii) the proposed Plan of Allocation; and (iii) information regarding Lead Counsel's forthcoming motion for an award of attorneys' fees and expenses.[2]   The Notice also provides specific information regarding the date, time, and place of the Final Approval Hearing, and sets forth the procedures and deadlines for:  (i) submitting a Claim Form and (ii) objecting to any aspect of the Settlement, including the proposed Plan of Allocation, and Lead Counsel's request for attorneys' fees and expenses.  As discussed below, no second opportunity for opting out of the Class is necessary under the particular circumstances of this Action.  *See* §VI below.

The content of the proposed Notice also meets the requirements of the PSLRA.  *See* 15 U.S.C. §78u-4(a)(7). In addition to the foregoing, the Notice includes: (i) a statement of the amount to be distributed, determined in the aggregate

---

[2]   As set forth in the Notice, Lead Counsel, on behalf of Plaintiffs' Counsel, will formally move the Court for an award of attorneys' fees in an amount not to exceed 14% of the Settlement Fund amount after reimbursement of expenses paid or incurred in the Action in an amount not to exceed $1 million plus interest, which estimate includes the costs of providing notice and administering the class settlement.  In addition, Lead Plaintiff may seek reimbursement of up to an aggregate amount not to exceed $50,000 for its reasonable costs and expenses incurred in representing the Class and litigating the Action.

and on an average per share basis; (ii) a statement of the potential outcome of the case (*i.e.*, whether there was agreement or disagreement on the amount of damages); and (iii) a brief statement that explains the reasons why the Parties are proposing the Settlement.  *See* 15 U.S.C. §78u-4(a)(7).

As outlined in the Preliminary Approval Order, the proposed Claims Administrator, Epiq Global, under the direction of Lead Counsel, will notify Class Members of the proposed Settlement.  Epiq was selected because of its significant experience in serving as the claims administrator in securities class actions.

Epiq prepared a detailed notification procedure based on its past experience. Thus, the notification process will rely primarily on a broad marketing campaign targeted publications designed to reach as many Synchronoss shareholders as possible.

The Notice and Claim Form substantially in the forms of Exhibits A-1 and A-3 to the Stipulation, will be accessible to all interested persons who view the links on the above-referenced sites.  In addition, the Claims Administrator will mail the Notice and Claim Form to all persons and entities who can be identified through reasonable efforts and Defendants have agreed to assist in these identification efforts.  In addition, the Claims Administrator will cause copies of the Notice and Claim Form, along with other documents and information relevant to the Settlement, to be posted on the Settlement website, www.SynchronossSettlement.com.

In sum, the Notice and Summary Notice "'fairly, accurately, and neutrally describe the claims and parties in the litigation as well as the terms of the proposed settlement and the identity of persons entitled to participate in it.'" *Shapiro*, 2018 WL 3158812, at \*7 (quoting *Foe v. Cuomo*, 700 F. Supp. 107, 113 (E.D.N.Y. 1988) *aff'd*, 892 F.2d 196 (2d Cir. 1989)).  Accordingly, Lead Counsel respectfully submits that the proposed notice program is adequate and should be approved by the Court.

## VI.    THE PROPOSED SCHEDULE SHOULD BE APPROVED

In connection with preliminary approval of the Proposed Settlement, the Court must also set a final approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims, opting out of the settlement, and objecting to the Settlement.  Lead Plaintiff respectfully submits the following schedule for the Court's consideration, as set forth in the Preliminary Approval Order.

| Event | Date |
|---|---|
| Commence Mailing of Notice | 14 calendar days after entry of Notice Order ("Notice Date") |
| Publish Summary Notice | 10 calendar days after Notice Date |
| Service by Lead Counsel on Defendants' Counsel of Affidavit Confirming Notice | 7 calendar days prior to Settlement Hearing |
| Deadline to Submit Proofs of Claim and Release | 120 calendar days after Notice Date |
| Deadline to Request Exclusion from the Settlement Class | 21 calendar days prior to Settlement Hearing |

| Deadline to File Objections to the Proposed Settlement | 21 calendar days prior to Settlement Hearing |
| Lead Plaintiff to File Motion for Approval of the Settlement and Lead Counsel to File Application for Attorneys' Fees and Expenses | 30 calendar days prior to Settlement Hearing |

## **CONCLUSION**

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant the motion for preliminary approval of the proposed Settlement and enter the [Proposed] Order Preliminarily Approving Settlement, Providing for Notice, and Certifying Class.

DATED:  August 20, 2021

Respectfully submitted,

_/s/ James E. Cecchi_
James E. Cecchi
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO,
P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

_Counsel for Lead Plaintiff and Liaison Counsel for the Class_

Daniel L. Berger (_pro hac vice_)
Jonathan D. Park (_pro hac vice_)
GRANT & EISENHOFER P.A.
485 Lexington Avenue
New York, New York 10017
Tel:  (646) 722-8500
Fax:  (646) 722-8501

Kyle J. McGee
Rebecca A. Musarra (_pro hac vice_)
GRANT & EISENHOFER P.A.
123 Justison Street
Wilmington, Delaware 19801
Tel:  (302) 622-7000
Fax:  (302) 622-7100

_Counsel for Lead Plaintiff and Proposed Class Counsel_