Exhibit 1

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE SYNCHRONOSS TECHNOLOGIES, INC. SECURITIES LITIGATION | Civil Action No. 17-2978 (ZNQ) (LHG) **Class Action** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

## <u>STIPULATION OF SETTLEMENT</u>

This Stipulation of Settlement dated August 19, 2021 (the "Stipulation" or the "Settlement Agreement") embodies a settlement (the "Settlement") made and entered into by and among the following Settling Parties: (i) Lead Plaintiff Employees' Retirement System of Hawaii ("Hawaii ERS" or "Lead Plaintiff") on behalf of itself and each Member of the Settlement Class, and (ii) defendants Synchronoss Technologies, Inc. ("Synchronoss") and Karen L. Rosenberger ("Rosenberger," and together with Synchronoss, the "Defendants"), by and through their counsel of record in the above-captioned litigation pending in the United States District Court for the District of New Jersey.  Subject to the approval of the Court, this Stipulation is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Settlement Class's Released Claims and the Defendants' Released Claims, upon and subject to the terms and conditions hereof, without any admission or concession concerning the merits, or lack thereof, of any claim, factual allegation, or defense by Lead Plaintiff or by Defendants.  Throughout this Stipulation, all capitalized terms used, but not immediately defined, have the meanings given to them in Section II, *infra*.

## I.    RECITALS

A.    This consolidated action is currently pending before the Honorable Zahid N. Quraishi in the United States District Court for the District of New Jersey and was brought on behalf of all persons and entities who purchased or otherwise acquired common stock of Synchronoss at any time in the period of October 28, 2014 to June 13, 2017, and were purportedly damaged thereby.

B.    On May 1, 2017, an initial class action complaint was filed in this Action, No. 17-cv-02978.  (ECF No. 1.)  A second class action complaint was filed on May 2, 2017, *College v. Synchronoss Technologies, Inc. et al.*, No. 17-cv-03005 (D.N.J.).  On June 8, 2017, a third class action complaint was filed, *Flack v. Synchronoss Technologies, Inc. et al.*, No. 17-cv-04147 (D.N.J.). On June 14, 2017, a fourth class action complaint was filed in *City of Atlanta Firefighters' Pension Fund v. Synchronoss Technologies, Inc., et al.*, No. 17-cv-04326 (D.N.J.).

C.    On June 30, 2017, Hawaii ERS moved for consolidation of the related actions and for appointment as Lead Plaintiff, and for approval of its selection of lead and liaison counsel. (ECF No. 10.)

D.    On September 6, 2017, the Court granted Hawaii ERS's motion and consolidated the above-referenced cases. (ECF No. 20.)  In the same order, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995, the Court appointed Hawaii ERS as Lead Plaintiff of the consolidated action, Grant & Eisenhofer P.A. as Lead Counsel, and Carella Byrne Cecchi Olstein Brody & Agnello as Liaison Counsel.  *Id.*

E.    On November 20, 2017, Hawaii ERS filed its Consolidated Class Action Complaint in the U.S. District Court for the District of New Jersey.  (ECF No. 38.)  The complaint alleged

violations of Section 10(b) and Section 20(a) of the Exchange Act and asserted that Synchronoss—at the direction of then-CEO Stephen Waldis and then-CFO Karen Rosenberger—prematurely recognized contractual revenues and knowingly overstated Company revenues to investors for the fiscal years 2014-2016.  The complaint further alleged that Defendants also inflated Synchronoss's revenues with respect to a deal involving Sequential Technology International, LLC ("Sequential"), whereby the Company received a one-time $9.2 million license fee, which the Company allegedly improperly booked as revenue for the purported purpose of falsely meeting earnings targets.

F.      From the outset of the Action, Defendants have denied all of these allegations and have consistently maintained that they never made statements that were false or misleading.

G.      On February 2, 2018, Defendants filed a motion to dismiss the original complaint. (ECF No. 45.)  Hawaii ERS filed its opposition on March 19, 2018.  (ECF No. 48.)  Defendants filed their reply on May 11, 2018.  (ECF No. 58.)

H.      On August 24, 2018, before Defendants' motion to dismiss was decided, Hawaii ERS filed a Consolidated Amended Class Action Complaint ("Consolidated Amended Complaint").

I.      On November 6, 2018, Defendants filed a motion to dismiss the Consolidated Amended Complaint.  (ECF No. 66.)  Hawaii ERS filed its opposition on December 14, 2018. (ECF No. 68.)  Defendants filed their reply on February 5, 2019.  (ECF No. 74.)

J.      On June 28, 2019, the Court issued an opinion granting Defendants' motion to dismiss. The Court also granted Hawaii ERS leave to replead.  (ECF No. 76.)

K.      On August 14, 2019, Hawaii ERS filed a Second Amended Class Action Complaint ("Second Amended Complaint") (ECF No. 81).   This operative complaint, like the original

complaint, alleged that that Defendants had issued false and misleading statements regarding the Company's revenues in violation of Section 10(b) and Section 20(a) of the Exchange Act by prematurely recognizing revenue from contracts prior to receiving a signed contract, in violation of GAAP, and knowingly concealing from investors that the Company had improperly recognized revenue from the Sequential transaction in order to meet the Company's revenue targets.  The Second Amended Complaint added allegations from five additional confidential witnesses— ▪▪▪▪ ▪▪ ▪▪ ▪▪▪▪▪▪ ▪▪ ▪▪▪▪▪▪▪▪▪▪ ▪▪▪▪▪▪▪▪▪▪ ▪▪▪ ▪▪▪▪▪▪ ▪▪▪▪▪ ▪ ▪▪ ▪▪▪▪▪ ▪▪▪ ▪▪▪▪▪▪▪▪▪ Defendants' alleged scienter at the time of the misstatements.

L.      On October 4, 2019, Defendants filed a motion to dismiss the Second Amended Complaint.  (ECF No. 84.) Lead Plaintiff filed its opposition on November 25, 2019.  (ECF No. 85.)  Defendants filed a reply on January 10, 2020.  (ECF No. 90.)

M.      On May 29, 2020, the Court issued its opinion on Defendants' motion to dismiss the Second Amended Complaint.  The Court granted-in-part and denied-in-part the motion, which resulted in, among other things, the dismissal of all claims against Synchronoss' former CEO Stephen G. Waldis and claims based upon alleged manipulation of expenses and alleged improper accounting for acquisitions and divestures, and Defendants' forward-looking statements.  (ECF No. 92.)

N.      Following the Court's decision sustaining part of the Second Amended Complaint, the parties begin to negotiate concerning a schedule for and the scope of discovery.  The parties began exchanging discovery in Fall 2020.

O.      On October 30, 2020, Hawaii ERS filed a motion for class certification, which included as an exhibit the declaration of Hawaii ERS's class certification expert, Benjamin Sacks. (ECF No. 120.)  Before filing their opposition to the Hawaii ERS's class certification motion,

Defendants took deposition testimony pursuant to Rule 30(b)(6) of a representative of Hawaii ERS. Defendants also took the deposition testimony of Mr. Sacks. On February 12, 2021, Defendants filed their opposition, supported by the report of Defendants' class certification expert, Dr. Mukesh Bajaj. (ECF No. 137.) Thereafter, Hawaii ERS took the deposition of Dr. Bajaj. On March 26, 2021, Hawaii ERS filed its reply in support of class certification, along with a rebuttal report from Mr. Sacks. (ECF No. 144.) The motion for class certification has been fully submitted since April 20, 2021.

P.      Hawaii ERS and Lead Counsel believe that the claims asserted in the Action have merit. However, they recognize and acknowledge the expense, complexity, and time required for additional proceedings necessary to prosecute the Action against Defendants through trial. Hawaii ERS and Lead Counsel also have taken into account the uncertain outcome and the risk of trial, especially in complex securities fraud cases, such as this Action, as well as the risks posed by the difficulties and delays relating to fact and expert discovery, class certification, summary judgment and trial, post-trial motions, potential appeals of the Court's determination of said motions, and the verdict of a jury. Hawaii ERS and Lead Counsel also are aware of the defenses to the claims in this Action. Hawaii ERS and Lead Counsel believe that the Settlement set forth in this Stipulation confers substantial benefits upon the Settlement Class in light of the circumstances presented here. Based on their evaluation, Hawaii ERS and Lead Counsel have determined that the Settlement set forth in this Stipulation is fair, reasonable, and adequate and in the best interests of the Settlement Class.

Q.      Defendants have denied and continue to deny that they violated the federal securities laws or any laws, and maintain that their conduct was at all times proper and in compliance with all applicable laws. Defendants have denied and continue to deny specifically

each and all of the claims and contentions in the Action, along with all charges of wrongdoing or liability against them arising out of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action.  Defendants also have denied and continue to deny, *inter alia*, the allegations that Defendants made, knowingly or otherwise, any material misstatements or omissions in any public statements; that Defendants acted recklessly or with culpable intent; that Lead Plaintiff has sufficiently established market efficiency as required for a presumption of reliance; that any member of any class has suffered any damages; that the price of Synchronoss common stock was artificially inflated by reason of the alleged misrepresentations, omissions, or otherwise; or that the members of any class were harmed by the conduct alleged in the Action or that could have been alleged as part of the Action.  In addition, Defendants maintain that they have meritorious defenses to all claims alleged in the Action.

R.     Nevertheless, taking into account the uncertainty, risks, costs, and distraction inherent in any litigation, especially in complex cases such as this Action, Defendants have determined that it is desirable and beneficial that the Action be settled in the manner and upon the terms and conditions set forth in this Stipulation.  As set forth in ¶¶8.2-8.3 below, this Stipulation shall in no event be construed or be deemed to be evidence of an admission or concession by Defendants or any of the Released Parties with respect to any claim or allegation, nor of any fault or liability or wrongdoing or damage whatsoever.

## II.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW THEREFORE IT IS HEREBY STIPULATED AND AGREED, by and among Hawaii ERS (for itself and Settlement Class Members), and Defendants, by and through their respective counsel of record, that, subject to the approval of the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the Settling Parties from the Settlement set forth herein, the Action, the Released Claims, and all matters encompassed

within the scope of the releases set forth in this Stipulation shall be finally and fully compromised, settled, and released, and the Action shall be dismissed with prejudice as to all Settling Parties upon and subject to the terms and conditions of the Stipulation, as follows:

1.    **Definitions:**

As used in this Stipulation, and any exhibits attached hereto and made a part hereof, the following terms have the meanings specified below.  For avoidance of doubt, certain terms defined above are defined herein as well.  In the event of any discrepancy, the definitions below control:

1.1    "Action" means the consolidated case styled *In re Synchronoss Technologies, Inc. Securities Litigation*, 17-cv-2978, and the consolidated cases styled (1) *David College, et al. v. Synchronoss Technologies, Inc., et al.*, 17-cv-03005 (D.N.J.); (2) *City of Atlanta Firefighters' Pension Fund  et al. v. Synchronoss Technologies, Inc.*, 17-cv-04326 (D.N.J.); (3) *Flack v. Synchronoss Technologies, Inc. et al.*, No. 17-cv-04147 (D.N.J.); and (4) *John Robinson et al. v. Synchronoss Technologies, Inc.*, et al., 17-cv-02978 (D.N.J.).

1.2    "Authorized Claimant" means any Settlement Class Member who submits a valid Proof of Claim and Release form and whose claim for recovery has been allowed pursuant to the terms of the Stipulation and Plan of Allocation.

1.3    "CAFA" means Class Action Fairness Act.

1.4    "Claim Form" or "Proof of Claim" shall mean the Proof of Claim and Release form, which, subject to approval of the Court, shall be substantially in the form attached hereto as Exhibit A-3.

1.5    "Claims Administrator" or "Notice Administrator" means Epiq Global.

1.6    "Class Period" means the period October 28, 2014, to June 13, 2017, inclusive.

1.7    "Counsel for Ms. Rosenberger" means Alston & Bird.

1.8     "Counsel for Synchronoss" means Morgan, Lewis & Bockius LLP.

1.9     "Court" means the United States District Court for the District of New Jersey.

1.10    "Defendants" means Synchronoss Technologies Inc. and Karen L. Rosenberger.

1.11    "Defendants' Counsel" means Counsel for Synchronoss and Counsel for Ms. Rosenberger.

1.12    "Effective Date" means the first date by which all of the events and conditions specified in ¶7.1 of the Stipulation have been met and have occurred.

1.13     "Escrow Account" means the segregated and separate escrow account designated and controlled by the Escrow Agent at one or more national banking institutions into which the Settlement Amount will be deposited for the benefit of Settlement Class Members.

1.14    "Escrow Agent" means Huntington Bank or its respective successor.

1.15    "Final" means, with respect to any order or judgment of court, that such order or judgment represents a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise.  Without limitation, an order becomes "Final" when the last of the following has occurred: (i) the expiration of the time to file a motion to reconsider, alter or amend the Judgment or order without any such motion having been filed; (ii) the expiration of the time in which to appeal the Judgment or order has passed without any appeal having been taken; or (iii) if a motion to reconsider, alter or amend is filed or if an appeal is taken, immediately after the determination of that motion or appeal so that it is no longer subject to any further judicial review or appeal whatsoever, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of the appeal or otherwise in such a manner as to permit the consummation of the Settlement, in accordance with the terms and conditions of this Stipulation.  For purposes of this paragraph, an "appeal" shall include any petition for a writ of

certiorari or other writ that may be filed in connection with approval or disapproval of this Settlement, but shall not include any appeal which concerns only the award of attorneys' fees and expenses, or the Lead Plaintiff Award or the Plan of Allocation of the Settlement Fund.

1.16     "Judgment" means the judgment and order of dismissal with prejudice to be rendered by the Court upon approval of the Settlement, substantially in the form attached hereto as Exhibit B.

1.17     "Lead Counsel" means Grant & Eisenhofer, P.A., 485 Lexington Avenue, New York, NY 10017.

1.18     "Lead Plaintiff" or "Plaintiff" means Employees' Retirement System of the State of Hawaii.

1.19     "Liaison Counsel" means Carella, Byrne, Cecchi, Olstein, Brody & Agenllo P.C.

1.20     "Net Settlement Fund" means the portion of the Settlement Fund that shall be distributed to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court, after provision for the amounts set forth in ¶¶5.5(a)-(d) of this Stipulation.

1.21     "Notice" means the Notice of Pendency and Proposed Settlement of Class Action, which, subject to approval of the Court, shall be substantially in the form attached hereto as Exhibit A-1.

1.22     "Notice and Administration Costs" means the reasonable costs and expenses incurred in connection with providing notice to Settlement Class Members and providing notice pursuant to CAFA.  Such amounts shall include, without limitation, the actual costs of printing, mailing and publishing both the Notice and any Summary Notice, locating and soliciting Class Member claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Proofs of Claim, and paying escrow fees

and costs, if any, and the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and processing the submitted claims.

1.23    "Notice Order" shall mean the Court's order authorizing Notice to the Settlement Class in substantially the same form as Exhibit A attached hereto.

1.24    "Person" means any individual, corporation, limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, association, joint stock company, joint venture, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and including any of their heirs, successors, representatives, or assigns.

1.25    "Plaintiff's Counsel" means Lead Counsel and Liaison Counsel.

1.26    "Plan of Allocation" means a plan or formula to be proposed by Lead Plaintiff for allocating the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.  Any Plan of Allocation is not part of the Stipulation, and the Released Defendant Parties shall have no responsibility or liability with respect to the Plan of Allocation.

1.27    "Related Parties" means, as applicable, each and all of a Person's or entity's respective present and former parents, subsidiaries, divisions, joint ventures, affiliates, and each and all of their respective present and former employees, contractors, members, partners, principals, agents, founders, officers, directors, controlling shareholders, attorneys, advisors, accountants, auditors, financial or investment advisors or consultants, banks or investment bankers, personal or legal representatives, insurers, co-insurers, reinsurers, related or affiliated entities, predecessors, successors, spouses, estates, heirs, executors, trusts, trustees, administrators, agents, representatives, and assigns, in their capacity as such, and any entity in which a  Person or entity has a controlling interest.

1.28    "Released Defendant Parties" means each and all of the Defendants and each and all of their Related Parties.

1.29    "Released Plaintiff Parties" means Lead Plaintiff, Lead Plaintiff's counsel, and all other Settlement Class Members.

1.30    "Released Parties" means the Released Defendant Parties and Released Plaintiff Parties.

1.31    "Releasing Plaintiffs and Settlement Class Members" means Lead Plaintiff, each Settlement Class Member, and to the fullest extent permissible under law, each of their Related Parties.

1.32    "Released Claims" shall refer to the Settlement Class's Released Claims and the Defendants' Released Claims.

1.33    "Settlement" means the settlement contemplated by this Stipulation.

1.34    "Settlement Agreement" means this Stipulation of Settlement entered into between Lead Plaintiff and Defendants on the date identified on the first page hereof.

1.35    "Settlement Amount" means the principal amount of Nineteen Million (US $19,000,000.00), to be paid pursuant to ¶2.1 of this Stipulation.

1.36    "Settlement Class" means all Persons or entities who directly or through an intermediary purchased or otherwise acquired Synchronoss common stock at any time during the period of October 28, 2014 through June 13, 2017, inclusive.  Excluded from the Settlement Class are:  (i) Defendants; (ii) the present or former executive officers or members of the Board of Directors of Synchronoss; (iii) the immediate family members (as defined in 17 C.F.R. §229.404 (Instructions (1)(a)(iii) and (1)(b)(ii), substituting "Synchronoss" for "the registrant") of any excluded Person; (iv) any entity in which any Defendant has, or had during the Class Period, a

controlling interest; and (v) any affiliate of Synchronoss.  Also excluded from the Settlement Class are any Persons and entities who exclude themselves by submitting a request for exclusion that is accepted by the Court.

1.37    "Settlement Class Member" means a Person or entity who falls within the definition of the Settlement Class as set forth above.

1.38    "Settlement Class's Released Claims" means any and all claims, demands, rights, causes of action, and liabilities of every nature and description (including "Unknown Claims" as defined in ¶1.48), whether known or unknown, contingent or absolute, liquidated or not liquidated, accrued or unaccrued, suspected or unsuspected, disclosed or undisclosed, apparent or not apparent, foreseen or unforeseen, matured or not matured, which now exist, heretofore or previously existed, or may hereafter exist, including, but not limited to, any claims arising under federal, state, common, or foreign law, whether in the United States or anywhere else in the world, that Lead Plaintiff or any other Settlement Class Member (i) asserted in the Second Amended Complaint filed on August 14, 2019, the Consolidated Amended Class Action Complaint filed on August 24, 2018, the Consolidated Class Action Complaint filed on November 20, 2017, or in the earlier complaints filed in the Action (on May 1, 2017, May 2, 2017, June 8, 2017 and June 14, 2017), or (ii) could have asserted or could in the future assert in any forum that concern, arise out of, refer to, are based upon, or are related in any manner to the allegations, transactions, facts, matters, occurrences, representations, statements, or omissions alleged, involved, set forth, or referred to in any of the complaints in the Action.  Notwithstanding the foregoing, "Settlement Class's Released Claims" does not include claims relating to the enforcement of the Settlement.

1.39    "Settlement Fund" means the Settlement Amount, together with all interest and income earned thereon after being transferred to an account controlled by Escrow Agent, and which may be reduced by payments or deductions as provided for herein or by Court order.

1.40    "Settlement Hearing" shall mean the hearing to be held by the Court to determine whether to grant final approval to the Settlement of the Action as set forth herein.

1.41    "Defendants' Released Claims" means all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common, or foreign law, that arise out of or relate to the institution, prosecution, or settlement of the claims against Defendants in the Action.  Notwithstanding the foregoing, "Defendants' Released Claims" does not include claims relating to the enforcement of the Settlement.

1.42    "Settling Parties" means Defendants and Lead Plaintiff on behalf of itself and Settlement Class Members.

1.43    "Summary Notice" means the Summary Notice of Pendency and Proposed Settlement of Class Action, which, subject to approval of the Court, shall be substantially in the form attached hereto as Exhibit A-2, including as translated into foreign languages.

1.44    "Supplemental Agreement" means the agreement described in ¶7.3.

1.45    "Tax Expenses" means expenses and costs incurred in connection with the calculation and payment of taxes or the preparation of tax returns and related documents, including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs relating to filing the returns described in ¶2.10.

1.46    "Tax" or "Taxes" means any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund as described in ¶2.10.

1.47    "Unknown Claims" means (i) any Settlement Class's Released Claim that any Plaintiff or any other Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release, which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Defendant Parties, or might have affected his, her or its decision not to object to this settlement or seek exclusion from this settlement, and (ii) any Defendants' Released Claim that any Defendant does not know or suspect to exist in his or its favor at the time of the release, which, if known by him, her, or it, might have affected his, her or its settlement with and release of the Released Plaintiff Parties and Settlement Class Members.

**2.      The Settlement**

      **a.      The Settlement Fund**

2.1    Within thirty (30) days of preliminary approval of the Settlement by the Court in the Action, Synchronoss will cause its insurers to pay the Settlement Amount on behalf of Defendants in accordance with the instructions to be provided by the Escrow Agent.  No individual or entity other than Synchronoss's insurers shall be responsible for paying the Settlement Amount. The Settlement Amount may be paid by wire transfer, by delivering to the Escrow Agent a check or checks payable to the Settlement Fund, by any combination of those methods, or in any other manner agreed upon by the Escrow Agent and Synchronoss.  Within one (1) business day of execution of this Stipulation, the Escrow Agent will furnish to Synchronoss adequate payment instructions consisting of wire transfer instructions, instructions for payment by check, and a completed IRS Form W-9 for the Settlement Fund, including an address and tax ID number.

2.2    The Escrow Agent shall deposit the Settlement Amount plus any accrued interest in a segregated Escrow Account maintained by the Escrow Agent.

2.3    Other than the obligation of Synchronoss to cause its insurers to pay the Settlement Amount pursuant to ¶2.1, the Released Defendant Parties shall have no obligation to make any

other payments in the Escrow Account or to the Escrow Agent, the Notice Administrator and Claims Administrator and their Related Parties, or to any Releasing Plaintiffs and Settlement Class Members or to Lead Counsel.

    **b.**  **The Escrow Agent**

  2.4  The Escrow Agent shall invest the Settlement Fund deposited pursuant to ¶2.1 hereof in United States Agency or Treasury Securities or other instruments backed by the full faith and credit of the United States Government, or fully insured by the United States Government or an agency thereof, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates, or otherwise as provided pursuant to the terms of an Escrow Agreement entered into among Lead Counsel, Defendants' Counsel and the Escrow Agent, dated August 19, 2021.  All costs and risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund.  The Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions or the actions of the Escrow Agent, or any transaction executed by the Escrow Agent.

  2.5  The Escrow Agent shall not disburse the Settlement Fund except: (a) as provided in the Stipulation or Escrow Agreement; (b) as directed by an order of the Court; or (c) with the written agreement of both Lead Counsel and Defendants' Counsel.

  2.6  Subject to further order(s) or directions as may be made by the Court, or as provided in the Stipulation, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of the Stipulation.

  2.7  All funds held by the Escrow Agent shall be deemed and considered to be in custodia legis of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Stipulation or further order(s) of the Court or, in

the event that the Settlement is not approved by the Court or is terminated, canceled, or fails to become effective, pursuant to ¶7.4 below.

2.8     Notwithstanding the fact that the Effective Date will not have occurred, the Escrow Agent, without further approval of Defendants or the Court, may withdraw up to $200,000 from the Settlement Fund to pay any reasonable Notice and Administration Costs actually incurred.

2.9     Upon the occurrence of the Effective Date, no Defendant, or any other Person or entity who or which paid any portion of the Settlement Amount on behalf of Synchronoss, shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever (including, without limitation, the number of Proof of Claim and Release forms submitted, the collective amount of recognized claims of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund), except as set forth in ¶7.4 below.

**c.     Taxes; Qualified Settlement Fund**

2.10    The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "Qualified Settlement Fund" within the meaning of Treasury Regulation §1.468B-1.

(a)     In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.10, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)     For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent.  The Escrow Agent, at the direction of Plaintiff's Counsel, shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treasury Regulation §1.468B-2(k)).  Such returns (as well as the election described in ¶2.10(a) hereof) shall be consistent with this ¶2.10 and in all events shall reflect that all Taxes (including any estimated Taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.10(c) hereof.

(c)     All (a) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Defendant Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (b) Tax Expenses, including expenses and costs incurred in connection with the operation and implementation of this ¶2.10 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing the returns described in this ¶2.10(c)), shall be paid out of the Settlement Fund; in all events the Released Defendant Parties shall have no liability or responsibility for the Taxes or

the Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation §1.468B-2(l)(2)) and the Released Defendant Parties are not responsible, nor shall they have any liability, therefor. The Settling Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶2.10.

(d)     For the purpose of this ¶2.10, references to the Settlement Fund shall include both the Settlement Fund and any earnings thereon.

### d.     Termination of Settlement

2.11     In the event the Settlement is not approved by the Court or is terminated, canceled, or fails to become effective for any reason, including, without limitation, in the event the Judgment is reversed or vacated following any appeal taken therefrom, the Settlement Fund (including accrued interest), less amounts incurred or due and owing for Notice and Administration Costs, Taxes, or Tax Expenses pursuant to ¶¶2.8 and 2.10 of this Stipulation, shall be refunded pursuant to ¶¶6.3 and 7.4 of this Stipulation upon written instructions from Defendants' Counsel.

### 3.      Class Certification, Notice of Order, and Settlement Hearing

3.1     Solely for purposes of the Settlement and subject to approval by the Court, the Settling Parties stipulate to:  (a) certification of the Action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure; (b) appointment of Lead Plaintiff as Class Representative for the Settlement Class; and (c) appointment of Lead Counsel as Class Counsel for the Settlement Class pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.  The certification of the Settlement Class shall be binding only for purposes of the Settlement, and only if the Judgment becomes Final and the Effective Date as described in ¶1.12 occurs.  Should the Settlement Class not be certified or should any court amend the definition of the Settlement Class, each of the Settling Parties reserves the right to terminate the Settlement in accordance with ¶7 hereof.

3.2     Following the execution of the Stipulation by all Parties, and by the Court-ordered deadline, Lead Plaintiff shall submit the Stipulation together with its exhibits (the "Exhibits") to the Court and shall move for an order for certification of the class for purposes of settlement; setting of dates for the dissemination of the Notice, claims deadlines, opt out date, objection date, and Settlement Hearing; approval of the Claims Administrator; approval of the Notice; approval of the form and content of the Proof of Claim and Release; and approval of the publication of the Summary Notice, substantially in the forms of Exhibits A-1 – A-3, attached hereto.

3.3     It shall be solely Lead Counsel's responsibility to disseminate the Notice and Summary Notice to the Settlement Class in accordance with this Stipulation and as ordered by the Court.  Settlement Class Members shall have no recourse as to the Released Defendant Parties with respect to any claims they may have that arise from any actual or alleged failure of the notice process.

3.4    Lead Counsel shall request that after the Notice is first disseminated to the Settlement Class, and not earlier than ninety (90) calendar days after the date on which Defendants are required to provide notice pursuant to the Class Action Fairness Act as provided in ¶5.4, below, the Court hold the Settlement Hearing and approve the Settlement of the Action as set forth herein. At or after the Settlement Hearing, Lead Counsel also shall request that the Court approve the proposed Plan of Allocation and Lead Plaintiff's request for attorneys' fees and expenses.

3.5    Any Settlement Class Member who wishes to opt out of the Settlement Class must submit a timely written request for exclusion on or before the opt out date, in the manner specified in the Court's Notice Order. Group opt-outs, including "mass" or "class" opt outs, are prohibited. Any Settlement Class Member who does not submit a timely written request for exclusion will be bound by all proceedings, orders and judgments in the Action, whether or not he, she, or it timely submits a Proof of Claim and Release.

3.6    Any Settlement Class Member who wishes to object to the fairness, reasonableness or adequacy of this settlement or the award of attorneys' fees and expenses, must do so timely and in the manner specified in the Court's Notice Order.

3.7    If the Court enters the Notice Order, to the extent that the Action is not stayed pursuant to the Notice Order, the Settling Parties will jointly move the Court to stay all proceedings and deadlines other than necessary to effectuate the Settlement.

**4.    Releases**

4.1    Upon the Effective Date, Lead Plaintiff and each of the other Settlement Class Members, on behalf of themselves and their respective executors, administrators, successors, predecessors, and assigns, and any other Person or entity who has the right, ability, standing or capacity to assert, prosecute, or maintain on behalf of any Settlement Class Member any of the Settlement Class's Released Claims (or to obtain the proceeds of any recovery therefrom), shall

be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged against the Released Defendant Parties the Settlement Class's Released Claims (including, without limitation, Unknown Claims), whether or not such Lead Plaintiff or Settlement Class Member executes and delivers a Proof of Claim and Release or shares in the Settlement Fund.  Upon the Effective Date, Lead Plaintiff and Settlement Class Members shall be permanently barred and enjoined from commencing, instituting, prosecuting, maintaining or enforcing any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum wheresoever in the world, asserting the Settlement Class's Released Claims against any of the Released Defendant Parties (including, without limitation, Unknown Claims).

4.2     The Proof of Claim and Release to be executed by Lead Plaintiff and Settlement Class Members shall release the Settlement Class's Released Claims against the Released Defendant Parties and shall be substantially in the form contained in Exhibit A-3 attached hereto.

4.3     Upon the Effective Date, each of the Defendants, on behalf of themselves and their respective executors, administrators, successors, predecessors, and assigns, and any other Person or entity who has the right, ability, standing or capacity to assert, prosecute, or maintain on behalf of any Defendant any of the Defendants' Released Claims (or to obtain the proceeds of any recovery therefrom), in such capacity only, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged against the Released Plaintiff Parties any and all Defendants' Released Claims (including, without limitation, Unknown Claims), and shall be permanently barred and enjoined from the institution, maintenance, prosecution, or enforcement against any or all of the Released Plaintiff Parties of any and all Defendants' Released Claims (including, without limitation, Unknown Claims).

4.4      With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Lead Plaintiff and Defendants shall expressly waive, and each of the other Settlement Class Members shall be deemed to have waived, and by operation of the Judgment shall have waived, the provisions, rights, and benefits of California Civil Code §1542, which provides, in relevant part:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

Upon the Effective Date, Lead Plaintiff and Defendants shall expressly waive and each of the other Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have expressly, waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code §1542.  Lead Plaintiff and the other Settlement Class Members may hereafter discover facts in addition to or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Settlement Class's Released Claims, but, upon the Effective Date, Lead Plaintiff shall expressly, and each other Settlement Class Member, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all of the Settlement Class's Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, disclosed or undisclosed, matured or unmatured, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, without regard to the subsequent discovery or existence of such different or additional facts. Defendants may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Defendants' Released Claims,

but, upon the Effective Date, Defendants shall expressly, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Defendants' Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, disclosed or undisclosed, matured or unmatured, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, without regard to the subsequent discovery or existence of such different or additional facts.  Lead Plaintiff and Defendants acknowledge, and the other Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and an essential term of the Settlement of which this release is a part.

5. **Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund**

5.1     The Claims Administrator, subject to such supervision and direction of the Court as may be necessary or as circumstances may require, shall provide notice of the Settlement to the Class, shall administer and calculate the claims submitted by Class Members, and shall oversee distribution of the Net Settlement Fund to Authorized Claimants. Synchronoss, through its counsel, shall provide to the Claims Administrator within ten (10) business days following the  entry of the notice order and without any charge to Lead Plaintiff , Plaintiff's Counsel, the Class or the Claims Administrator, shareholder lists as appropriate for providing notice to the class.

5.2     The Notice and Claim Form shall be posted on the website established by the Claims Administrator for purposes of this Settlement.  In addition to posting filings from the Action, the website will provide information to potential Settlement Class Members based on the Notices approved by the Court and such information shall be consistent with the content, nature and characterization contained in the Notices and the terms of this Stipulation.  Neither the website nor any other materials provided by the Claims Administrator to potential Settlement Class

Members shall include Synchronoss's logo.  In accordance with the schedule set forth in the Notice Order, the Summary Notice, substantially in the form of Exhibit A-2 attached hereto, will also be published. The cost of providing such notice shall be paid out of the Settlement Fund.

5.3    The Notice shall set forth the general terms of the Settlement set forth in the Stipulation, the proposed Plan of Allocation, and the request for attorneys' fees and expenses submitted by Lead Plaintiff and Lead Counsel; the date and time of the Settlement Hearing; the right to object to the Settlement, proposed Plan of Allocation, or request for fees and expenses; the right to appear at the Settlement Hearing; and the right to request exclusion from the Class.

5.4    Defendants shall be responsible for working with the Notice Administrator to ensure that any notice required under the CAFA is provided not later than 10 days after the Stipulation is filed in court.  Any and all costs incurred by the Notice Administrator in providing CAFA notice shall be reimbursed from the Settlement Amount.  At least seven (7) calendar days before the Settlement Hearing, Defendants shall cause to be served on Lead Counsel and filed with the Court proof, by affidavit or declaration, regarding compliance with CAFA §1715(b).

5.5    The Settlement Fund shall be used to make the following payments:

(a)    to pay all Notice and Administration Costs;

(b)    to pay all Taxes and Tax Expenses described in ¶2.10 hereof;

(c)    to pay Lead Counsels' attorneys' fees and expenses;

(d)    to pay Lead Plaintiff's expenses and any service award under the PSLRA, 15 U.S.C. §77z-1(a)(4) and/or 15 U.S.C. §78u-4(a)(4), if and to the extent allowed by the Court; and

(e)    to pay the Net Settlement Fund to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court.

5.6     Upon the Effective Date and thereafter, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with ¶¶5.7-5.9 below.

5.7     Each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim, substantially in the form of Exhibit A-3 attached hereto, postmarked (if mailed) or received (if submitted electronically) by no later than one hundred twenty (120) calendar days after the Notice Date (as defined in Exhibit A attached hereto), or such other time as may be set by the Court (the "Bar Date"), signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim and as are reasonably available to such Person.

5.8     Except as otherwise ordered by the Court, all Settlement Class Members who fail to submit a Proof of Claim by the Bar Date, or such other period as may be ordered by the Court, or who submit a Proof of Claim that is rejected, shall be forever barred from receiving any payments pursuant to the Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of the Stipulation, the releases contained herein, and the Judgment.  Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not the obligation), to accept late-submitted claims for processing so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby.  No Person shall have any claim against Lead Counsel, the Claims Administrator, any Settlement Class Member, or any Released Defendant by reason of the exercise or non-exercise of such discretion.

5.9     Each Proof of Claim and Release shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, who shall determine, in accordance with

this Stipulation and the approved Plan of Allocation, the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to ¶5.11 below.

5.10    Proof of Claim and Release forms that do not meet the submission requirements may be rejected.  Prior to rejecting a Proof of Claim and Release in whole or in part, the Claims Administrator shall communicate with the claimant in writing to give the claimant the chance to remedy any curable deficiencies in the Proof of Claim and Release submitted.  The Claims Administrator, under the supervision of Lead Counsel, shall notify, in a timely fashion and in writing, all claimants whose Claims the Claims Administrator proposes to reject in whole or in part for curable deficiencies, setting forth the reasons therefor, and shall indicate in such notice that the claimant whose Claim is to be rejected has the right to a review by the Court if the claimant so desires and complies with the requirements of ¶5.11 below.

5.11    If any claimant whose timely claim has been rejected in whole or in part for curable deficiency desires to contest such rejection, the claimant must, within twenty (20) calendar days after the date of mailing of the notice required in ¶5.10 above, or a lesser period of time if the claim was untimely, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the claimant's request for review to the Court.

5.12    Each claimant who declines to be excluded from the Settlement Class shall be deemed to have submitted to the jurisdiction of the Court with respect to the claimant's claim, including, but not limited to, all releases provided for herein and in the Judgment, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to the claimant's status as a Settlement Class

Member and the validity and amount of the claimant's claim.  In connection with processing the Proofs of Claim and Release, no discovery shall be allowed on the merits of the Action or the Settlement.  All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court, but shall not, in any event, delay or affect the finality of the Judgment.  All Settlement Class Members, other claimants, and parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

5.13    The Claims Administrator shall calculate the claims of Authorized Claimants in accordance with the Plan of Allocation approved by the Court.  Following the Effective Date, the Claims Administrator shall send to each Authorized Claimant his, her, or its *pro rata* share of the Net Settlement Fund.  No distributions will be made to Authorized Claimants who would otherwise receive a distribution of less than $10.

5.14    The Settlement is not a claims-made settlement and, if all conditions of this Stipulation are satisfied and the Settlement becomes Final, Defendants will not have a reversionary interest in the Net Settlement Fund.  If there is any balance remaining in the Net Settlement Fund after a reasonable amount of time following the date of the initial distribution of the Net Settlement Fund, Lead Counsel shall, if feasible, redistribute in an equitable and economical fashion such balance among Authorized Claimants who negotiated the checks sent to them in the initial distribution and who would receive at least $10.00.  These distributions shall be repeated until the balance remaining in the Net Settlement Fund is *de minimis* and such remaining balance shall then be donated to a 501(c)(3) non-profit organization selected by Lead Counsel, and unaffiliated with

Lead Counsel, Lead Plaintiff, Defendants, and Defendants' Counsel, subject to approval by the Court.

5.15   The Released Defendant Parties shall have no liability, obligation, or responsibility whatsoever with respect to: (i) any act, omission, or determination by the Escrow Agent, Lead Counsel, Lead Plaintiff, or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, or calculation of claims to be paid from the Settlement Fund; or (v) the payment or withholding of Taxes or Tax Expenses, or any expenses or losses incurred in connection therewith.  No Person shall have any claim of any kind against the Released Defendant Parties with respect to the matters set forth above; and the Settlement Class Members, Lead Plaintiff and Lead Counsel release the Released Defendant Parties from any and all liability and claims arising from or with respect to the administration, investment or distribution of the Settlement Fund.  The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of the Released Defendant Parties harmless for any Taxes owed with respect to interest earned on the Settlement Fund after deposit into the Escrow Account and related expenses of any kind whatsoever (including, without limitation, Taxes payable by reason of any such indemnification), as well as for any claims related to the Plan of Allocation, the administration of the Settlement, the investment of the Settlement Fund, the processing of claims, or the disbursement of the Settlement Fund or the Net Settlement Fund.  Defendants shall notify the Escrow Agent promptly if Defendants receive notice of any claim for which they intend to seek indemnification.

5.16   Defendants take no position, and shall take no position, with respect to the Plan of Allocation or any other such plan as may be approved by the Court.  Defendants shall have no role

in adjudicating, or right to review, any claims submitted by Settlement Class Members for participation in distribution of the Settlement Fund.

5.17    It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund, including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of the Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in the Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel the Stipulation or affect the finality of the Court's Judgment approving the Stipulation and the Settlement set forth therein, or any other orders entered pursuant to the Stipulation.  Settlement Class Members and Defendants shall be bound by the terms of this Stipulation, irrespective of whether the Court disapproves or modifies the Plan of Allocation.

5.18    No Person shall have any claim against Lead Plaintiff, Plaintiff's Counsel, the Defendants, Defendants' Counsel, any of the other Released Parties, or the Claims Administrator based on distributions made substantially in accordance with the Settlement, the Stipulation, and the Plan of Allocation, or otherwise as further ordered by the Court.

## 6.    Attorneys' Fees and Expenses

6.1    Lead Counsel may submit an application or applications, on behalf of all Plaintiff's Counsel, for: (a) an award of attorneys' fees; (b) reimbursement of expenses or costs Plaintiff's Counsel incurred in connection with prosecuting the Action; and (c) any interest on such attorneys' fees and expenses as awarded by the Court at the same rate and for the same periods as earned by the Settlement Fund (until paid).  Lead Counsel's application for an award of attorneys' fees shall be in an amount not to exceed 20% of the remainder of the Settlement Fund after reimbursement of expenses or costs of Plaintiff's Counsel incurred in connection with prosecuting the Action.  In

addition, Lead Counsel may submit an application for an award from the Settlement Fund to Lead Plaintiff pursuant to the PSLRA, 15 U.S.C. §77z-1(a)(4) and/or 15 U.S.C. §78u-4(a)(4), in connection with its representation of the Settlement Class.  Any and all such attorneys' fees, expenses and Lead Plaintiff service award granted by the Court (whether payable to Lead Counsel or Lead Plaintiff) shall be payable solely out of the Settlement Fund.  Defendants shall take no position with respect to Lead Counsel's application for attorneys' fees and application for reimbursement of expenses, or to Lead Plaintiff's application for an award.

6.2     The attorneys' fees and expenses, as awarded by the Court, shall be paid to Lead Counsel from the Settlement Fund immediately upon entry of the Court's order awarding such fees and expenses.  This provision shall apply notwithstanding timely objections to, potential for appeal from, or collateral attack on, either the Settlement, the Plan of Allocation or the award of attorneys' fees and expenses.  Lead Counsel shall thereafter allocate the attorneys' fees among the other Plaintiffs' Counsel in a manner that Lead Counsel in good faith believes reflects the contributions of such counsel to the prosecution and resolution of the Action.

6.3     In the event that the Judgment or the order awarding such fees and expenses paid to Lead Counsel pursuant to ¶6.1 and ¶6.2,  is reversed or modified, or if the Settlement is canceled or terminated for any reason, then Lead Counsel shall, in an amount consistent with such reversal or modification, refund such attorneys' fees and expenses to the Settlement Fund pursuant to ¶3.4 plus the interest earned thereon, within seven (7) calendar days after (i) receiving notice from Defendants' Counsel or otherwise of the termination of the Settlement; or (ii) any order from a court of competent jurisdiction reducing or reversing the attorneys' fees and expense award.  Any refunds required pursuant to this paragraph shall be the joint and several obligation of each Plaintiff's Counsel to make appropriate refunds or repayments to the Settlement Fund.  Each

Plaintiff's Counsel, as a condition of receiving such fees or expenses on behalf of itself and each partner and/or shareholder of it, agrees that its law firm and its partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph.

6.4     The procedure for and the allowance or disallowance by the Court of Lead Counsel's application for attorneys' fees and expenses, or by the Lead Plaintiff for a service award, are not part of the Settlement set forth in the Stipulation, and any order or proceeding relating to this application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Stipulation, or affect or delay the finality of the Judgment approving the Stipulation and the Settlement of the Action.

6.5     Any fees and/or expenses awarded by the Court shall be paid solely from the Settlement Fund.  The Released Defendant Parties shall have no responsibility for any payment of attorneys' fees and/or expenses to Lead Counsel, or any other plaintiff's counsel, or service award to any plaintiff.  Likewise, the Released Defendant Parties shall have no responsibility or liability whatsoever for the requested allocation of any Fee and Expenses Award by Lead Counsel or among Plaintiff's Counsel, or any other Person who may assert some claim thereto, or relating to any Court order pertaining thereto.

**7.     Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

7.1     The Effective Date of the Stipulation is conditioned on the occurrence of all of the following events:

(a)     execution of this Stipulation;

(b)     the Settlement Amount has been transferred to the Escrow Account in accordance with the provisions of ¶2.1 above;

(c)     the Court has entered the Notice Order, substantially in the form of Exhibit A hereto, as required by ¶3.2 hereof;

(d)     Synchronoss has not exercised its option to terminate the Stipulation pursuant to ¶7.3 hereof;

(e)     the Court has entered the Judgment, which, *inter alia*, dismisses with prejudice the Action, as to Lead Plaintiff and Defendants, as set forth above, substantially in the form of Exhibit B attached hereto; and

(f)     the Judgment has become Final, as defined in ¶1.16 hereof.

7.2     Upon the occurrence of all of the events referenced in ¶7.1 hereof, any and all remaining interest or right of Synchronoss in or to the Settlement Fund, if any, shall be absolutely and forever extinguished.  If all of the conditions specified in ¶7.1 hereof are not met, then the Stipulation shall be canceled and terminated subject to ¶7.4 hereof unless Lead Counsel and Defendants' Counsel on behalf of their respective clients mutually agree in writing to proceed with the Settlement.

7.3     If Persons who otherwise would be Settlement Class Members have timely and validly requested exclusion from the Settlement Class in accordance with the provisions of the Notice Order and the Notice given pursuant thereto, and if the total value of Synchronoss common stock purchased or acquired by such Persons equals or exceeds an amount specified in a separate Supplemental Agreement Regarding Requests for Exclusion ("Supplemental Agreement") executed between Lead Counsel and Defendants' Counsel, then Synchronoss shall have the option to terminate this Stipulation and Settlement in accordance with the procedures set forth in the Supplemental Agreement.  Unless the Court directs otherwise, the Supplemental Agreement will not be filed with the Court unless and until a dispute between Lead Plaintiff and Defendants

concerning its interpretation or application arises.  Copies of all requests for exclusion received, together with copies of all written revocations of requests for exclusion, shall be delivered to Defendants' Counsel by Lead Counsel or the Settlement Administrator within the later of two (2) business days of Lead Counsel's receipt or seven (7) calendar days prior to the Settlement Hearing. Synchronoss may terminate the Stipulation and Settlement by serving written notice of termination on the Court and Lead Counsel on or before ten (10) business days after the deadline for requests for exclusion, on or before five (5) business days after the Court grants additional time for exclusion for any reason, or on or before three (3) business days before the Settlement Hearing, whichever occurs last.  In the event that Synchronoss serves a written notice of termination, Synchronoss may withdraw its written notice of termination by providing written notice of such withdrawal to Lead Counsel and to the Court by no later than 5:00 PM Eastern Time on the day prior to the Settlement Hearing, or by such later date and/or time as shall be agreed upon in writing as between Lead Counsel and Defendants' Counsel.

7.4     Unless otherwise ordered by the Court, in the event the Settlement shall terminate, be canceled, or not become effective for any reason, within fourteen (14) calendar days after written notification of such event is sent by Counsel for Synchronoss and/or Counsel for Ms. Rosenberger to the Escrow Agent, the Settlement Fund (including accrued interest), less expenses which have either been incurred or disbursed pursuant to ¶¶2.8 or 2.10 hereof, shall be refunded pursuant to written instructions from Synchronoss's counsel.  At the request of Synchronoss's counsel, the Escrow Agent or their designees shall apply for any tax refund owed on the Settlement Fund and pay the proceeds, after deduction of any expenses incurred in connection with such application(s) for refund, at the written direction of Synchronoss's counsel.

7.5     In the event that the Stipulation is not approved by the Court or the Settlement is terminated or fails to become effective in accordance with its terms, the Settling Parties shall be restored to their respective positions in the Action as of May 7, 2021.  In such event, the terms and provisions of the Stipulation, with the exception of ¶¶1.1-1.48, 2.9, 6.3, 7.4, and 8.4 hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in this Action or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*, and the Settling Parties shall be deemed to return to their status as of May 7, 2021.  No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees and expenses, and interest awarded by the Court to Lead Counsel or Lead Plaintiff, shall constitute grounds for cancellation or termination of the Stipulation or Settlement.

7.6     Synchronoss warrants and represents that it is not "insolvent" within the meaning of 11 U.S.C. §101(32) as of the time this Stipulation is executed and as of the time the Settlement Amount is actually transferred and anticipates it will not be as of the time the payments of the Settlement Amount are actually transferred or made as reflected in this Stipulation.   This representation is made by Synchronoss and not by Synchronoss's counsel.  If, before the Judgment becomes Final, any Defendant files for protection under the Bankruptcy Code, or any similar law, or a trustee, receiver, conservator, or other fiduciary is appointed under bankruptcy, or any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money or any portion thereof to the Escrow Agent by or on behalf of Synchronoss to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited with the Escrow

Agent by others, then, at the election of Lead Plaintiff, the Settling Parties shall jointly move the Court to vacate and set aside the release given and the Judgment entered in favor of Defendants, and the Settling Parties and the Settlement Class Members shall be restored to their litigation positions as of May 7, 2021 and any cash amounts in the Settlement Fund (less any Taxes paid, due, or owing with respect to the Settlement Fund and less any Class Notice and Administration Costs actually incurred, paid, or payable) shall be returned in accordance with ¶7.4.

**8.     Miscellaneous Provisions**

8.1     The Settling Parties (a) acknowledge that it is their intent to consummate this Stipulation; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation expeditiously.

8.2     The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Action.  The Settlement shall not be deemed an admission by any Settling Party or any of the Released Parties as to the merits of any claim, allegation, or defense.  The Settling Parties and their counsel agree that they shall not assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense or settlement of the Action, and the Final Judgment shall contain a finding that all Settling Parties and their counsel complied with the requirements of Rule 11 with respect to the institution, prosecution, defense, and resolution of the Action.  The Settling Parties agree that the amount paid to the Settlement Fund and the other terms of the Settlement were negotiated in good faith at arm's length by the Settling Parties and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.  The Settling Parties further agree that the amount paid to the Settlement Fund were negotiated and agreed without any discussion of Lead Counsel's attorneys' fees and expenses.

8.3     Neither the Stipulation nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement:  (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, the truth of any of the allegations in the Action of any wrongdoing, fault, or liability of Defendants or their Related Parties, or that Lead Plaintiff or any Settlement Class Members have suffered damages, harm or loss; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, the appropriateness of treating the Action as a class action for any other purpose than the settlement; or (c) is or may be deemed to be or may be used as an admission, or evidence of, any fault or omission of any of the Defendants or their Related Parties in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal anywhere in the world.  The Released Parties may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar, set-off or reduction or any other theory of claim preclusion or issue preclusion or similar defense, crossclaim, counterclaim, or third party claim.

8.4     All agreements made and orders entered during the course of the Action relating to the confidentiality of documents and information shall survive this Stipulation.

8.5     All of the Exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

8.6     The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

8.7     No waiver of any term or provision of this Settlement Agreement, or of any breach or default hereof or hereunder, shall be valid or effective unless in writing and signed by or on

behalf of all Settling Parties or their respective successors-in-interest.  No waiver of any term or provision of this Settlement Agreement, or of any breach or default hereof or hereunder, shall be construed as a waiver of the same or any other term or provision or of any previous or subsequent breach thereof.

8.8     The Stipulation and the Exhibits attached hereto (together with the Supplemental Agreement referred to in ¶7.3) constitute the entire agreement among the Settling Parties and no representations, warranties, or inducements have been made to any Settling Party concerning the Stipulation or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.  Except as otherwise provided herein (or, as between Defendants, in any separate agreements between them), each Settling Party shall bear its own costs.

8.9     The Settlement is not conditioned upon the settlement or approval of settlement of any derivative suits or other suits.

8.10     This Settlement Agreement shall be construed and interpreted to effectuate the intent of the Settling Parties, which is to resolve completely those claims and disputes, including in the Action, and as more fully described herein.  If any provision of this Settlement Agreement shall be determined to be invalid, void, or illegal, such provision shall be construed and amended in a manner that would permit its enforcement, but in no event shall such provision affect, impair, or invalidate any other provision hereof.

8.11     Neither the Settlement Class Members nor Defendants shall be bound by this Stipulation if the Court modifies material terms thereof, provided, however, that it shall not be a basis for Settlement Class Members to terminate the Settlement if the Court modifies any proposed Plan of Allocation or criteria for allocation of the Net Settlement Fund amongst Authorized Claimants, or the Plan of Allocation is modified on appeal.  Nor shall it be a basis to terminate the

Settlement if the Court disapproves of or modifies the terms of this Stipulation with respect to attorneys' fees or expenses or the distribution of the Net Settlement Fund.  Notwithstanding any such modification of the terms or Plan of Allocation or this Stipulation with respect to attorneys' fees or expenses, Released Defendant Parties shall be entitled to all benefits of the Settlement and shall not, under any circumstances, be called upon to contribute additional funds to the Settlement Fund.

8.12    Lead Counsel, on behalf of the Settlement Class, is expressly authorized by Lead Plaintiff to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to this Stipulation to effectuate its terms and also is expressly authorized to enter into any modifications or amendments to this Stipulation on behalf of the Settlement Class that it deems appropriate.

8.13    Lead Plaintiff and Lead Counsel represent and warrant that none of Lead Plaintiff's claims or causes of action referred to in this Action or this Stipulation has been assigned, encumbered, or in any manner transferred in whole or in part.

8.14    Neither Lead Plaintiff, Lead Counsel, Plaintiff's Counsel nor anyone affiliated with them in this Action (including without limitation litigation funders) shall use the name of any Defendant in any marketing materials, whether oral or written, including on any websites affiliated in any way with any of the foregoing, nor have they done so in the period between May 7, 2021 and the date of this Stipulation.  For avoidance of doubt, the foregoing does not limit in any way Lead Counsel's ability to participate in any Court-ordered notice plan, or to create one or more web pages to be used for client questions.  Lead Counsel and Plaintiff's Counsel may identify on firm websites and firm resumes that such counsel served as counsel for Lead Plaintiff and the class in connection with this Action, provided that (i) such websites shall not refer to any defendant by

name other than by referring to the case name and caption and (ii) said caption shall not be referenced or associated with any other marketing materials.

8.15    Each counsel or other Person executing this Stipulation or any of its Exhibits on behalf of any Settling Party hereby warrants that such Person has the full authority to do so.

8.16    All notices, requests, demands, claims, and other communications hereunder shall be in writing and shall be deemed duly given via email as set forth below:

***If to Lead Plaintiff or to Lead Counsel:***

Daniel L. Berger
GRANT & EISENHOFER P.A.
485 Lexington Avenue, 29th Floor
New York, NY 10017
dberger@gelaw.com

***If to the Defendants or to Defendants' Counsel:***

Jordan Hershman
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110
Jordan.hershman@morganlewis.com
Tel: (617) 951-8455

*Counsel for Synchronoss Technologies, Inc.*

**ALSTON & BIRD**

Jenny Kramer
90 Park Avenue
New York, NY 10016
Jenny.kramer@alston.com
Tel:  (212) 210-9400
Fax:  (212) 210-9444

John A. Jordak, Jr.
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
John.jordak@alston.com
Tim.fitzmaurice@alston.com
Tel:  (404) 881-7000
Fax:  (404) 253-8358

*Counsel for Karen L. Rosenberger*

8.17    This Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court.

8.18    This Stipulation shall be binding upon, and inure to the benefit of, the heirs, successors, and assigns of the Settling Parties hereto.

8.19    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation, and all Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation.

8.20   Pending approval of the Court of this Stipulation and its Exhibits, all proceedings in this Action shall be stayed, and all Settlement Class Members shall be barred and enjoined from prosecuting any of the Released Claims against any of the Released Defendant Parties.

8.21   This Settlement Agreement and the Exhibits hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of New York, and the rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of New York, without giving effect to that State's choice-of-law principles.

8.22   This Settlement Agreement shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties and the Settling Parties have contributed substantially and materially to the preparation of this Settlement Agreement.

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys, dated August 19, 2021.

**GRANT & EISENHOFER P.A.**

/s/

Daniel L. Berger (*pro hac vice*)
Jonathan D. Park (*pro hac vice*)
485 Lexington Ave.
New York, New York 10017
Tel: (646) 722-8500
Fax: (646) 722-8501

**GRANT & EISENHOFER P.A.**
Kyle J. McGee
Rebecca A. Musarra (*pro hac vice*)
123 Justison Street
Wilmington DE 19801

**MORGAN, LEWIS & BOCKIUS LLP**

/s/

Harvey Bartle IV
502 Carnegie Center
Princeton, NJ 08540-6241
Tel: (215) 963-5521
Fax: (215) 963-5001

**MORGAN, LEWIS & BOCKIUS LLP**
Jordan D. Hershman (*pro hac vice*)
Jason D. Frank (*pro hac vice*)
Emily E. Renshaw (*pro hac vice*)
One Federal Street

Tel: (302) 622-7000
Fax: (302) 622-7100

*Counsel for Lead Plaintiff and*
*Lead Counsel for the Class*

**CARELLA, BYRNE, CECCHI,**
  **OLSTEIN, BRODY & AGNELLO, P.C.**
James E. Cecchi
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

*Counsel for Lead Plaintiff and*
*Liaison Counsel for the Class*

Boston, MA  02110-1726
Tel: (617) 951-8455

*Counsel for Synchronoss Technologies, Inc.*

**ALSTON & BIRD**

/s/
_____

Jenny Kramer
90 Park Avenue
New York, NY 10016
Tel: (212) 210-9400
Fax: (212) 210-9444

**ALSTON & BIRD**

John A. Jordak, Jr. (*pro hac vice*)
Timothy J. Fitzmaurice (*pro hac vice*)
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
john.jordak@alston.com
tim.fitzmaurice@alston.com
Tel: (404) 881-7000
Fax: (404) 253-8358

*Counsel for Karen L. Rosenberger*